AVON PRODUCTS, INC., Plaintiff, *v.* JOSEPH BERSON et al., Doing Business under the Name of B & B PHARMACY, Defendants.

Supreme Court, Special Term, New York County, November 29, 1954.

*Bernard Weitzman* for defendants.

*Breed, Abbott & Morgan* for plaintiff.

EDER, J.   Defendants move, under rule 106 of the Rules of Civil Practice, to dismiss the complaint for failure to state a cause of action.

This case presents the question of the limits of judicial intervention in our system of free enterprise.   The problem involved is that of balancing the right of a manufacturer to have his method of sales distribution of products protected from wrongful interference as against the right of a retailer to buy and sell merchandise without restriction.

Plaintiff, a well-known manufacturer of cosmetics, seeks to enjoin defendants, operating a retail pharmacy in Brooklyn, New York, from purchasing or otherwise acquiring its products from sales representatives of plaintiff and then selling them. The complaint is directed solely to the wrongful acquisition of the goods and not to the manner or price of their resale by defendants to the public; it contains no charge of fraud or deception upon the public, of '' passing off '' or confusion of identity of the products sold, nor of resale below or above plaintiff's established price.

Since a motion under rule 106 concedes the factual allegations of the complaint, the following must be deemed admitted by defendants for the purpose of this motion:

That plaintiff and its predecessors have for more than sixty-five years sold the products manufactured by them exclusively through the medium of sales representatives assigned to specific territories, authorized to sell only to ultimate consumers, upon house-to-house calls, and not to wholesalers or retailers.   That plaintiff's business, which transacted during the past ten years about $264,000,000 worth of sales and upon which it spent about $6,000,000 on advertising, depends upon the maintenance of such sales system.   That said system was and is known to the entire trade, including defendants.   Upon information and belief, that one or more of the sales representatives, whose identity is unknown to plaintiff, directly or indirectly has sold and is selling its products to defendants.   Upon information and belief, that defendants induced and are inducing said repre-

sentatives to sell its products to them or otherwise to be the means whereby defendants have been able to purchase those products for resale at their pharmacy. That these acts have injured and are injuring plaintiff by violating the sales system upon which its entire business structure depends; by encouraging other sales representatives and retailers to do the same and thus ultimately destroying said sales system; by causing a reduction in the sales which may then be effected by loyal representatives, and adversely affecting in other respects their relationship with plaintiff with consequent impairment of morale. That defendants have refused to furnish plaintiff with the identity of the representatives referred to and have also refused to desist from the acts complained of.

Defendants maintain that in the absence of any allegation of wrongful conduct on their part, such as fraud, deception or unfair resale price, the complaint is demurrable. They urge that no cause of action arises from the alleged purchase by them of plaintiff's products and their resale, the transaction being a normal incident of business ingenuity which did not cause pecuniary loss to plaintiff, no complaint being made either as to the price received therefor by plaintiff or the price at which resold by defendants.

Plaintiff's argument is that defendants are wrongfully interfering with its long-established system of selling direct to consumers only, the preservation of which is claimed to be entitled to greater consideration than the desire of defendants to make unearned profits out of the good will created by plaintiff. Its brief cites *International News Service* v. *Associated Press* (248 U. S. 215), a landmark in the field of unfair competition, and *Metropolitan Opera Assn.* v. *Wagner-Nichols Recorder Corp.* (199 Misc. 786, affd. 279 App. Div. 632). In these cases defendants unlawfully appropriated as their own the product in the form of news and music, respectively, of the labor, skill, expenditures, and reputation of the plaintiffs without paying therefor, and injunctions were granted on the theory of unjust enrichment. Wrongful exploitation of a competitor's effort, the core of those decisions, is, however, here involved only indirectly by way of argument or analogy.

Analysis of the complaint reveals more direct and persuasive reasons for sustaining it. It appears that defendants are charged with two distinct wrongful acts: (1) with knowledge of the limited authority of plaintiff's sales representatives to sell only to consumers, they bought plaintiff's products from one or more of them ar ˙ ˖esold them; (2) they knowingly

induced one or more representatives to sell to them in violation of their agreement with plaintiff to sell only to consumers. The latter may be deemed the principal, and the former the alternative, claim upon which the right to relief is based; presumably, if plaintiff should fail to prove active inducement by defendants, reliance may be placed on the alternative ground that mere purchase with knowledge of limited authority is sufficient cause for enjoining the resale. In any event, if the complaint is sustainable on either ground, the motion must be denied.

I shall consider first the main charge of inducement. The tort of "inducing breach of contract," entitling the aggrieved party to injunctive relief and damages, is of comparatively recent origin. It was not announced as a definitive doctrine until 1853 (*Lumley* v. *Gye,* 23 L. J. [Q. B.] 112). It was applied at first only to employment agreements, the tort consisting of enticing away a valuable employee, and then only upon a showing of malice. It has since been extended to a variety of agreements, lost the connotation of "malice", and become established law in England and the great majority of the States of this country.

In this State it was originally held that, absent fraud or malice, inducement to breach of employment contract was not actionable (*Ashley* v. *Dixon,* 48 N. Y. 430). Later it was held that recovery for the tort was not to be confined to service contracts but to be deemed applicable to all contracts generally, and further, that malice was no longer an essential element (*Posner Co.* v. *Jackson,* 223 N. Y. 325; *Lamb* v. *Cheney & Son,* 227 N. Y. 418; *Campbell* v. *Gates,* 236 N. Y. 457). In the *Campbell* decision (*supra*), in discussing the nature of defendant's wrongful motive to be inferred from his intentional act of inducement, the court said, at page 460, "This does not necessarily mean actual malice or ill-will, but the intentional doing of a wrongful act without legal or social justification. The action is predicated not on the intent to injure, but on the intentional interference, without justification, with A's contractual rights, with knowledge thereof."

The tort itself thus appears to be the product of the conditions of modern industry and has been evolved and developed according to the trend of the influence of ethical standards upon the freedom in business and trade which underlies the competitive struggle in our system of free enterprise. Basically it is a question of "balancing interests", of the limits of one's common-law rights to buy and sell, to engage in competition, when they interfere with the contractual rights of others (Sayre:

"Inducing Breach of Contract", 36 Harv. L. Rev. 663). The tendency has been to extend the doctrine of liability and to broaden its scope to include "all culpable damaging invasions of contract relations" (Carpenter: "Interference with Contract Relations", 41 Harv. L. Rev. 728).

It has accordingly been held that it is not a justification for knowingly procuring a breach of a contract that defendant acted without an improper purpose but only to promote and advance his own economic interests. This principle has been stated and applied in numerous decisions in this country, such as *Sorenson* v. *Chevrolet Motor Co.* (171 Minn. 260, 214); *R an W Hat Shop* v. *Sculley* (98 Conn. 1); *Monte Vista Potato Grower's Co-op. Assn.* v. *Bond* (80 Col. 516), and *California Grape Control Bd.* v. *California Produce Corp.* (4 Cal. App. 2d 242). In the last two of this group the situation was somewhat analogous to the case at bar; an outside dealer who induced members of a co-operative marketing association to deal with him and thus violate their contract to market their entire crop with the association, was enjoined.

In *Singer Sewing Mach. Co.* v. *Lang* (186 Wis. 530, 535–536), the facts were almost identical with those here present. Plaintiff sold its machines directly to the consumer exclusively through agents appointed by it in various localities throughout the country at a price and upon terms fixed by plaintiff. Defendant obtained machines by inducements offered such agents and then sold them at less than the fixed price. It is clear from the decision that no added significance was given to the element of the lower resale price. The gravamen of defendant's actionable wrong was stated in the following words: "one who induces an agent to betray the trust reposed in him by his principal must respond in damages which the principal sustains thereby." With regard to plaintiff's method of exclusive distribution direct to the consumer, the court said, "It is well settled that one engaged in private business may freely exercise his own independent discretion as to parties with whom he will deal. [Citing numerous cases.] * * * We discover nothing about plaintiff's method of sale and distribution rendering plaintiff the defenseless prey of piracy or depriving it of the protection of a court of law and equity." This last sentence was in answer to defendant's charge that such sales distribution system was illegal as in restraint of trade, a claim also advanced here by defendant and which will be later discussed more fully.

A comparable situation existed in *Revlon Products Corp.* v. *Bernstein* (204 Misc. 80), where the court denied a motion to

dismiss the complaint. Plaintiff, a cosmetics manufacturer, sold direct to retail stores, and also to certain jobbers under contracts specifying a particular territory and limiting the right of resale to beauty parlors and beauty schools. Defendant was alleged to be a retailer who, knowing the terms of such contract, induced a jobber to sell to him. There also the claim of illegal restraint of trade was raised but rejected by the court on the ground that plaintiff was within his rights and the law in selecting a method of sales distribution which would prevent jobbers whom he sold from selling to retailers competing with his retail stores.

This complex and increasingly important subject of interference with contractual relations has been discussed on several occasions in American Law Reports, the latest exhaustive annotation appearing at page 1227 of volume 26 of the second series.

From this review of the origin and development of the tort of '' inducing breach of contract '' it is clear that the complaint states a cause of action on the main charge of inducement. The allegations of defendants' knowledge of the arrangements made by plaintiff with its representatives limiting their authority to sell only to consumers and of their inducing the sale to them nevertheless by such representatives, are sufficient to charge defendants with an actionable wrong which, in view of the lack of an adequate remedy at law, calls for equitable relief. The precise means or motive of inducement need not be alleged, as persuasion alone when used with intent to induce a breach is actionable (*Elk St. Market Corp.* v. *Rothenberg,* 233 App. Div. 243).

The fundamental principle involved in this line of cases was set forth in the following words in *Federal Waste Paper Corp.* v. *Garment Center Capitol* (268 App. Div. 230, 234, affd. 294 N. Y. 714), '' The right to carry on a lawful business is a property right and acts committed without just cause or excuse which interfere therewith may be enjoined ''.

In view of this determination on the main charge in the complaint, the motion must be denied. However, I deem it proper to consider the legal sufficiency of the alternative charge, as it furnishes an additional reason, in my opinion, for denying the motion.

Assuming that defendants did not induce a representative to sell to them but that they merely accepted his offer to buy albeit with knowledge of his agreement to sell only to consumers, does plaintiff then allege a sufficient cause of action? It has been said that if a stranger to a contract does nothing to bring about

the situation by way of procurement or persuasion and simply accepts the fruits of the breach, there is no wrongful interference and no cause of action (*Sweeney* v. *Smith*, 167 F. 385, 387). Whether such principle may properly be here applied, if no sale to any other druggist is shown, appears arguable, since, until defendants accept the offer in the assumed case, there is no breach, and their active participation by so accepting is necessary for the consummation of the breach.

However, it is unnecessary to resolve that problem since, whatever the means, active or passive, by which defendants obtained the goods from plaintiff's representative, title did not pass and defendants did not have the right to resell. Since all factual allegations are to be given on this motion every favorable inference, the allegation concerning the limited authority of the representatives carries with it the inference that they were not vested with title but that title passed directly from plaintiff through them to the ultimate consumer, that they were, in effect, agents with limited authority. Having knowledge of such limited authority defendants must be deemed to have known that the representatives were without power to transfer title to them by the purported sale and that, accordingly, they could be restrained by plaintiff from continuance of such transactions and from attempting to assume dominion over the goods by selling them.

The alternative charge being thus found sufficient to sustain the complaint, the motion must be denied on that additional ground.

We come now to defendants' contention that once a sale of plaintiff's product is made, it has lost exclusive control thereof and that its attempted system of restraint upon sales is contrary both to the common law and the antitrust laws.

Their brief cites *Keeler* v. *Standard Folding Bed Co.* (157 U. S. 659), holding that even as to a patented article the purchaser has the absolute right of resale unrestricted in time or place. There, defendant bought from the inventor's Michigan assignee and sold in competition with the Massachusetts assignee. The court noted that he had bought "from one authorized to sell" and that the question of whether the patentee "may protect himself and his assignees by special contracts brought home to the purchasers is not a question before us, and upon which we express no opinion" (p. 666). Here we do have a special agreement known to defendants and a purchase from one not authorized to sell to them.

Defendants also refer to the article by Zechariah Chafee, Jr., " Equitable Servitudes on Chattels " (41 Harv. L. Rev. 945), as supporting their position (and that of decisions in various jurisdictions) that restrictions as to use of resale may not be imposed by a seller of chattels to bind subpurchasers who come into ownership of the chattels subsequent to the original purchaser, as distinguished from restrictive covenants in deeds of real property which do " run with the land " and bind subsequent purchasers. The gist of the argument in this line of cases is that restrictions in the use or resale by subpurchasers are contrary to the freedom of alienation, the right of free trade, which is regarded as essential to the ownership and transfer of personal property (*Miles Med. Co.* v. *Park,* 220 U. S. 373).

Professor Chafee points out, however, that this doctrine does not prevent the granting of relief in a proper case on the basis of ordinary tort principles where the purchaser is guilty of inducing a breach of the contract known to him. Moreover, he specifically excludes from the doctrine the " agency system " of sales distribution of products, under which binding restrictions as to manner and terms of sale by such agents may lawfully be provided by the manufacturer.

This distinction between agents and outside dealers was the basis of the holding in *United States* v. *General Elec. Co.* (272 U. S. 476). Although that case dealt with the question of violation of the Sherman Anti-trust Act, the precise issue determined was whether the attempted restriction on sales conditions, terms and prices by agents of a manufacturer was in illegal restraint of trade. The court found that the dealers of General Electric Co. were genuine agents, not purchasers in disguise, and that the sales distribution plan by which title passed directly from the company to the purchaser was not a device to fix prices *after* the sale thereof and was thus not in restraint of trade. The decision pointed out, at page 487, that in *Miles Med. Co.* v. *Park* (*supra*), the dealers' contracts made them purchasers, not agents, of the manufacturer and that it was for that reason the court then held that the manufacturer no longer had the right to impose any restrictions on a resale by them as an attempted and wrongful restraint of trade. A manufacturer may control *original* sales of his product through agents; it is only when he restricts its *resale* by others that " restraint of trade " comes into play.

The cases cited by defendants deal with subsequent purchasers and are, therefore, not in point. In the instant case plaintiff had the right to insist upon the sales effected by its representa-

tives being made exclusively to the ultimate consumer. Under the facts alleged a violation of that method of sales distribution by any representative gave rise to a cause of action which equity should enforce in aid of plaintiff's rights, giving such relief as the particular circumstances in the case warrant. Such remedy is not to be confined to internal discipline or breach of contract action against the representative, as, indeed, is impossible here due to ignorance of his identity. The remedy should be coextensive with the wrong and the damage done, and this obviously includes the matter of unauthorized sales by a retailer here complained of.

The motion to dismiss is accordingly denied.