PATH INSTRUMENTS INTERNATION-
AL CORP., Plaintiff,

v.

ASAHI OPTICAL CO. Ltd., the Hughes-
Owens Company, Ltd., the Hughes-
Owens Corp., Saburo Matsumoto, Masa
Tanaka, Hiroshi Hara, Peter Hopper,
Arthur Temperton and Del Fleury, De-
fendants.

No. 69 Civ. 3435.

United States District Court,
S. D. New York.

March 19, 1970.

Daniel H. Greenberg, New York City, for plaintiff.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants Hughes-Owens Co., Ltd., Hughes-Owens Corp., Peter Hopper, Arthur Temperton and Del Fleury; James W. Lamberton and John S. Murray, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for defendants Asahi Optical Co., Ltd., Saburo Matsumoto, Masa Tanaka and Hiroshi Hara; Ira M. Millstein and Marshall C. Berger, New York City, of counsel.

MANSFIELD, District Judge.

In this action brought by Path Instruments International Corporation ("Path") against three corporate and six individual defendants seeking damages and injunctive relief, defendants move to dismiss the complaint and to quash return of service.

On July 20, 1966, Path entered into a written agreement with the Meisei Trading Company ("Meisei") and the Fuji Surveying Instruments Manufacturing Company ("Fuji"), under the terms of which Path was made the sole distributor in the United States and Canada of surveying instruments manufactured by Fuji and exported from Japan by Meisei. The agreement was to continue through June 30, 1968, and would be automatically renewed unless terminated by notice given more than 60 days before that date.

On January 24, 1967, Fuji was acquired by the defendant Asahi Optical Company, Ltd. ("Asahi"), becoming the latter's wholly-owned and operated subsidiary. Thereafter, changes began to occur in Fuji's distribution and sales systems. On May 6, 1968, Asahi established a wholly-owned subsidiary in New York, to be known as Asahi Optical America, Inc. ("Asahi (America)"). On June 10, 1968, Fuji terminated its export and foreign sales agreements with Meisei.[1] During this same period

---

1. It appears that Meisei disputes the effectiveness of the alleged termination.

Meisei takes the position that the termination agreement of June 10, 1968 has

Path experienced difficulty in filling orders placed with Fuji either directly or through Meisei, and apparently resorted to other suppliers in order to obtain the instruments it needed. On November 22, 1968, Fuji wrote to Path advising it that in view of Path's purchases from other suppliers, in violation of the exclusive dealing agreement of July 20, 1966, it would henceforth consider that agreement breached and void.[2]

In the meantime Fuji had been negotiating with the Hughes-Owens Company, Ltd. ("Hughes-Owens (Canada)"), a Canadian concern which had for some years purchased Fuji products from Path for distribution in Canada, with respect to Hughes-Owens (Canada) becoming a direct distributor of Fuji products in Canada and the United States. On October 31, 1968, Hughes-Owens (Canada) accordingly set up an Illinois subsidiary, The Hughes-Owens Corporation of Illinois ("Hughes-Owens (Illinois)"), and in December, 1968, executed a distributorship agreement with Fuji in Japan.

For descriptive convenience the defendants may be divided into the Japanese and the Canadian group. The Japanese group comprises Asahi and three of its officers and directors: Saburo Matsumoto, who is also president of Asahi (America); Masanori Tanaka, who is also vice-president of Asahi (America); and Hiroshi Hara, who is also president of Fuji. The Canadian group consists of Hughes-Owens (Canada), Hughes-Owens (Illinois), two officers and directors of Hughes-Owens (Canada)—Arthur Temperton, who is also vice-president of Hughes-Owens (Illinois), and E. Peter Hopper, who is also president of Hughes-Owens (Illinois)—and one employee of Hughes-Owens (Illinois) who was previously employed by its Canadian parent.

Plaintiff's complaint states four causes of action arising out of the transactions described above: FIRST CLAIM (against all defendants): conspiracy to injure Path's business by inducing breach of contract: SECOND CLAIM (against Asahi and its three officers): breach of contract; THIRD CLAIM (against Hughes-Owens (Canada) and its officers): inducement of breach of contract; and FOURTH CLAIM (against all defendants): unfair competition. The conspiracy claim (FIRST CLAIM) alleges that the two groups of defendants conspired together to destroy Path's business by (1) breach of the distributorship agreement between Path, on the one hand, and Asahi and its subsidiary Fuji, on the other; (2) by breach of the sub-distributorship arrangement between Path and Hughes-Owens (Canada); (3) by creation of the new distributorship agreements between Fuji and Hughes-Owens (Canada) whereby the latter would act as the selling agent of Fuji instruments in the United States and Canada; (4) by creating Asahi (America) to transact Asahi's business in New York; and (5) by cutting off plaintiff's sources of supply and marketing outlets, and soliciting and selling to plaintiff's customers in the United States through various means of

been rendered null and void by Fuji's failure to perform its obligations thereunder. In late 1968 it warned both Hughes-Owens (Canada) and a Troy, New York, firm with whom Fuji had signed or was about to sign a distributorship contract, that it considered the agreement making it the exclusive distributor of Fuji products in the United States and Canada still in full force and effect. Meisei further advised that "all orders for delivery of such products in the U.S.A. must be given to us through Path Instruments International Corp. in New York city."

2. Path's response was as follows:
"Gentlemen:
We have your letter dated November 22, 1968.
Any purchases we have made of similar products or parts have been compelled by your own violations of the agreement dated July 20, 1966, in failing and refusing to accept orders and make deliveries thereunder. Our resultant and continuing damages are substantial; and we will hold you strictly accountable therefor."

unfair competition. The breach of contract claim (SECOND CLAIM) alleges that Asahi, *acting through the individual* defendants Matsumoto, Tanaka and Hara, breached the agreement of July 20, 1966, between Path and Fuji, the wholly-owned, operated and managed subsidiary of Asahi, by repudiating the agreement and by neglecting and refusing to fill orders properly submitted by Path. The third cause of action alleges that Hughes-Owens (Canada) acting by and through individual defendants Temperton and Hopper, induced Asahi to breach the 1966 contract. In the FOURTH CLAIM both groups of defendants are further alleged to have. competed unfairly with plaintiff by employing, in their sales and distributional efforts on behalf of Fuji products, catalog and style numbers as well as descriptive terminology created and first employed by Path in its own marketing of Fuji products. Plaintiff seeks damages of $1,000,000 with respect to each of the four causes of action stated and a permanent injunction restraining the defendants from further use of catalog and style numbers and descriptive terminology borrowed from plaintiff.

All defendants move to dismiss the complaint for lack of personal jurisdiction over them. The Japanese group move to dismiss the complaint for failure to state a claim on which relief can be granted.

### Jurisdiction

Jurisdiction over both groups of defendants is predicated upon New York's "long-arm" statute, § 302 of the Civil Practice Law and Rules. That section provides in pertinent part as follows:

"*(a) Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary * * * who in person or through an agent:

"1. transacts any business within the state; or

* * * * * *

"3. commits a tortious act without the state causing injury to person or property within the state * * * if he

(i) regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences . in the state and derives substantial revenue from interstate or international commerce; * * *."

Putting to one side for the moment . questions as to the liability of a parent for the acts of a subsidiary, it is alleged in the first cause of action that all of the defendants and each of them conspired together to injure plaintiff's business by the various means outlined above, including breach of the distribution agreement with plaintiff, creation of a new distributorship, establishment of a new New York subsidiary, cutting off supplies, etc. While the term "conspiracy," which refers merely to a joint or partnership undertaking as distinguished from independent conduct, would not be sufficient to convert a breach of contract into a "tortious act" within the terms of § 302(a) (3) (ii), cf. Rosemont Enterprises, Inc. v. Random House, Inc., 261 F.Supp. 691, 694–695 (S.D.N.Y.1966); Schenin v. Micro Copper Corp., 272 F.Supp. 523, 529 (S.D.N.Y.1967), a conspiracy to destroy plaintiff's business by the various alleged means would constitute a "tortious act", Sorenson v. Chevrolet Motor Co., 171 Minn. 260, 214 N.W. 754 (1927); Avon Products, Inc. v. Berson, 206 Misc. 900, 135 N.Y.S.2d 867 (Sup.Ct.1954), and would not be rendered less so by the fact that one of the means was breach of contract.

The question remains whether each of the defendants meets the further requirements of either subsection (i) or (ii) of § 302(a) (3). With. the exception of Asahi, it does not appear that

any of the corporate defendants has contacts with the State of New York of the continuous sort contemplated by subsection (i).[3] Nor does any of them, again with the possible exception of Asahi, derive "substantial" revenue from goods used or consumed or services rendered within the state. All of them, however, must reasonably have expected any acts designed to injure the business of plaintiff Path, a New York corporation, to "have consequences in the state" of New York. All of them, furthermore, do derive "substantial revenue from interstate or international commerce." Asahi is a large manufacturer of optical devices and instruments, exporting such items as the well-known Honeywell Pentax line of cameras and accessories. Some indication of the magnitude of its export operations is revealed by the 1966 contract between Path and Fuji—the latter of which, six months later, became a wholly-owned subsidiary of Asahi—providing that Path would purchase a minimum of $300,000 of surveying equipment from Fuji in the year 1967. Hughes-Owens (Canada) is in the business of producing, supplying and distributing drafting supplies and related lines of equipment. It employs about 370 employees in Montreal and at 13 other locations in Canada. While all of its sales (disregarding its Illinois subsidiary) are made in Canada, its 1968 gross sales revenue of $7,686,817 was derived from distribution and sale of inventory purchased from about 1,200 manufacturers and suppliers located in many countries throughout the world. Ten per cent of its present inventory, for instance, has been purchased from some 26 suppliers located in the State of New York.

Thus both Asahi and Hughes-Owens (Canada) are sizeable corporations, already engaged in transaction of substantial international business, for whom the expense and complexity of defending a lawsuit in the courts of New York will not be an unreasonable inconvenience of the sort envisaged by Judge Sobeloff in Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502, 507 (4th Cir. 1956). Cf. New York Civil Practice Law and Rules § 302, 1966 Supplementary Practice Commentary (McKinney Supp.1969–70 at 126).[4]

Hughes-Owens (Illinois) is a considerably smaller corporation than either Asahi or its own Canadian parent, having gross sales revenues for the period October 31, 1968 to August 31, 1969 of $85,021.45. In absolute terms this would not seem to be the "substantial" revenue contemplated by § 302(a) (3) (ii). Hughes-Owens (Illinois) is not,

---

3. Given Asahi's creation of its New York subsidiary Asahi (America), with an office and staff within the state, jurisdiction over Asahi could apparently be obtained under either § 301 or § 302(a) (3) (i). See Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967) ; Bryant v. Finnish National Airline, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E. 2d 439 (1965); Taca International Airlines, S.A. v. Rolls-Royce, Ltd., 15 N.Y. 2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965) ; Boryk v. deHavilland Aircraft Co., 341 F.2d 666 (2d Cir. 1965).

4. "Suppose a California tire dealer sold and installed a set of tires on an automobile belonging to a tourist with New York license plates. Presumably, the plates would make it foreseeable that the automobile would eventually return to New York, and that if the tires should fail, an injury would occur in New York. Would it be reasonable to require the tire dealer to defend the action in New York?

"Balancing these competing considerations, the new statute attempts to strike a compromise. A defendant who foresees consequences in New York will be held accountable for those consequences only where he 'derives substantial revenue from interstate or international commerce.' Judge Sobeloff's tire dealer, therefore, can be sued in New York only if his operations are both substantial and interstate (or international). While the protections of the foreseeability rules are ephemeral—in many cases can it be said to be unreasonable to foresee that a product will wind up in New York?—the safeguards built into the interstate or international character of the defendant's operations are more reassuring."

however, a local enterprise. It is the United States distributor for its parent Hughes-Owens (Canada), with a single office and warehouse in Addison, Illinois and one salesman-employee. Its president and vice-president hold the same offices in Hughes-Owens (Canada). Both its officers and its single employee have visited New York for purposes of soliciting business. It sells Hughes-Owens merchandise all over the country, having solicited business in Missouri, New York and Virginia and made the bulk of its sales in Chicago, Los Angeles and Pittsburgh.

The "substantial revenue" provision of § 302(a) (3) (ii) is intended to extend the jurisdiction of New York courts to those defendants committing out-of-state tortious acts with repercussions in New York, who, because of the extent and non-local nature of their operations, can consistently with the requirements of fundamental fairness be expected to defend lawsuits in foreign forums. See Supplementary Practice Commentary to § 302, *supra*. While Hughes-Owens (Illinois)'s small size may render it a marginal case, we think that given the inherently and almost exclusively interstate character of its business operations as a sales and distributional arm of a much larger organization, the revenue it derives from interstate commerce is sufficient to meet the requirements of § 302(a) (3) (ii) and to square with constitutional limitations on state long-arm jurisdiction.

As to the three corporate defendants, therefore, the motions to dismiss for want of personal jurisdiction are denied.

Defendants also challenge the jurisdiction of this court over all of the individual defendants except Masanori Tanaka, who is present in New York and was served with process here. It is settled that jurisdiction over individual officers and employees of a corporation may not be predicated merely upon jurisdiction over the corporation itself. Wilshire Oil Company v. Riffe, 409 F.2d 1277, 1281 n. 8 (10th Cir. 1969); Schen-

in v. Micro Copper Corp., 272 F.Supp. 523, 528–529 (S.D.N.Y.1967); Unicon Management Corp. v. Koppers Co., 250 F.Supp. 850 (S.D.N.Y.1966); Willner v. Thompson, 285 F.Supp. 394 (E.D.N.Y. 1968). Plaintiff does not offer any other theory of jurisdiction over the individual defendants in this case, and it does not appear that any is available. Defendants Matsumoto, Hara, Hopper, Temperton and Fleury are all nonresidents of New York and were served with process outside the state. While all have visited the state for business purposes connected with the subject matter of this action, none of them is alleged to have engaged in any course of conduct within the state on his own as opposed to his corporation's behalf, let alone a course of conduct sufficient to constitute "doing business" under § 301, or transaction of business under § 302(a) (1), or the persistent or substantial forms of conduct contemplated by § 302(a) (3). Defendants' motions to dismiss as to the individual defendants other than Masanori Tanaka are therefore granted.

### The § 12(b) (6) Motion

Defendant Asahi also moves to dismiss the complaint for failure to state a claim against it upon which relief can be granted. Assuming first that the complaint intended to state a claim against it for inducing breach of contract on the part of its subsidiary Fuji, Asahi argued that it is settled law in New York that a parent corporation may not be held liable for inducing breach of contract by a wholly-owned subsidiary, so long as its motivation is the protection of an economic interest. Were defendant Asahi correct in its interpretation of the complaint, its legal argument would be persuasive. Felsen v. Sol Cafe Manufacturing Corp., 24 N. Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969). However, plaintiff's claim against Asahi is not merely that it induced breach of contract. The claim is that Asahi joined with others to destroy plaintiff's business, in furtherance of

which, among other things, Asahi breached and repudiated the contract with plaintiff, which had been taken over by Asahi when Fuji became its wholly-owned subsidiary.

Thus a joint tort is alleged, in which Asahi is charged with having jointly participated with its subsidiary Fuji in planning and assisting to destroy plaintiff's business. Asahi's 100% ownership of Fuji would, of course, provide the motive. Since Asahi is thus charged as a co-participant, piercing of the corporate veil is not essential to proof of Asahi's liability as a joint tortfeasor.

■ In any event we do not accept Asahi's contention that as long as the various acts alleged to constitute the tort, particularly the repudiation of the 1966 contract, were carried out in the name of Fuji rather than Asahi, plaintiff must be relegated to proceeding against Fuji only and permitted to recover from Asahi only in the event that any resulting judgment against Fuji is unsatisfied. Although piercing of the corporate veil presents a formidable burden, which plaintiff would sustain only upon a clear showing, we do not believe that it is precluded.

On the present record, the evidence of Fuji's corporate independence or lack thereof is sketchy indeed. Plaintiff asserts only that Fuji is "wholly owned, operated and managed" by Asahi, and informs us that Hara, the President of Fuji, is also one of Asahi's directors. On the other hand, defendant Asahi offers as evidence of Fuji's corporate independence nothing more than that all documents and letters relating to the transactions out of which this action arises were signed by Fuji rather than Asahi. While this sort of formal evidence is sufficient to raise a presumption that Fuji is an independent corporate entity, it constitutes no bar to plaintiff's attempt to pierce the corporate veil if he can produce evidence that Asahi completely dominated and controlled Fuji in the transactions out of which this action arises. Cf. Boyle v.

Judy Cab Corp., 24 Misc.2d 746, 203 N. Y.S.2d 309 (1960). Such evidence is of a kind likely to be largely, if not exclusively, within the knowledge and control of defendant Asahi, particularly since the two corporations in question are located in Japan. Plaintiff may, of course, seek to elicit the proof through pretrial discovery, subject to the condition that if the parties can agree upon mutually satisfactory procedures, Asahi may seek protection against harassment by way of an appropriate order, see Rule 30, F.R.Civ.P.

The motion is denied.

It is so ordered.