HERZOG & STRAUS, a partnership organized under the laws of the State of New York, Plaintiff-Appellant,

v.

GRT CORPORATION, Defendant-Appellee.

No. 337, Docket 76–7357.

United States Court of Appeals, Second Circuit.

Argued Jan. 5, 1977.

Decided April 14, 1977.

---

790

Jerold Oshinsky, New York City (Arthur S. Olick, Leon B. Kellner, Scott B. Lunin, Anderson Russell Kill & Olick, P. C., New York City, of counsel), for plaintiff-appellant.

L. Peter Parcher, New York City (Peter A. Herbert, Leonard Ware, Palo Alto Cal., Robert Russell, Arrow Silverman & Parcher, P. C., New York City, of counsel), for defendant-appellee.

Before MOORE, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a sua sponte grant of summary judgment against appellant by the United States District Court for the Southern District of New York, Whitman Knapp, *Judge*. The grant immediately followed appellant's unsuccessful attempt, at a hearing, to obtain a preliminary injunction. So swiftly did the door of justice revolve in this instance that appellant filed suit in state court on a Friday (June 18, 1976), was removed to federal court on the following Thursday (June 24), and found itself out on the street, with summary judgment granted to its opponent on the court's own motion,[1] the very next Monday (June 28). We reverse the judgment.

Appellant is a New York partnership of certified public accountants. Its state court complaint alleged four causes of action, premised factually on the claim that appellee, a California music tape manufacturer, refused to permit appellant access to appellee's books and records for audits on behalf

1. The judgment commences, "A motion having been made by defendant for summary judgment dismissing the complaint . . . .," but there is no indication appellee made such a motion. Appellee's counsel did not speak at all during the hearing, according to the transcript, until after the court said to appellant's counsel: "I just heard your opponent make a motion for summary judgment, and that motion is granted."

of three of appellant's clients. Each of the clients was a song publisher who either contracted with appellee to manufacturer and distribute prerecorded magnetic tapes of master recordings, the rights to which were owned by the publisher, or issued appellee licenses entitling it to sell such tapes, and each contract entitled the publisher to conduct an independent audit of appellee's books and records for purposes of verifying royalty payments thereunder. One of the contracts named appellant as the auditing firm, and the other two clients requested appellant to make their contractually authorized audits. Appellee, however, notified each of the clients, as well as appellant, that it would not permit appellant to do so.

Each of the first three "causes of action" in appellant's state court complaint referred to one of the three clients; the complaint as to each spoke of "malicious interference by defendant . . . done with the sole purpose of causing injury to plaintiff [that] cannot . . . inure to the benefit of or create a profit for GRT. . . ." The fourth state court "cause of action" referred to appellee's "course of conduct to prevent plaintiff from performing work for its clients" and to appellee's "engaging in acts and practices which have damaged plaintiff in its business."

■ At the time of the scheduled hearing on appellant's request for a preliminary injunction, the court below immediately commenced to "explore" the issue whether appellant had "a cause of action at all." Before appellant's counsel was able to address himself to this question, the judge ventured the view that the affidavit supporting the request for a preliminary injunction indicated that appellee was denying appellant access "to protect itself from [appellant's] expertise," because appellant had found "derelictions" in other audits. The judge went on to say that, if this were true, appellant had no cause of action because appellee was serving its own self-interest. Despite arguments by appellant's counsel to the effect that the complaint stated a cause of action for interference with advantageous business relations, the court was of the view that, because appellant made an "admission" that appellee "did this in order to keep your client from proving him a crook," there could be no "cause of action"[2] under the New York law[3] of "prima facie tort." *See Advance Music Corp. v. American Tobacco Co.*, 296 N.Y. 79, 83–84, 70 N.E.2d 401, 402–03 (1946); *Benton v. Kennedy-Van Suan Mfg. & Eng. Corp.*, 2 A.D.2d 27, 28–29, 152 N.Y.S.2d 955, 957–58 (1st Dep't 1956).

■ Whatever the merits of Judge Knapp's holding as to the New York law on prima facie tort, we think appellant should have been given an opportunity to develop its alternative theory based on interference with business or contractual relations.[4] The rush to judgment here was so rapid

2. Perhaps because the suit began in state court, the parties and the court below spoke of legal "causes of action." This phraseology, which harks back to the days of David Dudley Field, has a tendency to cause "unfortunate rigidity and confusion." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, at 115 (1969). In federal court, a plaintiff need only state facts showing he is entitled to relief. Fed. R.Civ.P. 8(a)(2). A case removed to federal court is thenceforth governed by federal procedural rules. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local 70*, 415 U.S. 423, 437, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

3. At this early stage of the proceedings it is by no means certain that New York law governs. Appellant's clients, like appellee, are California-based, and the contracts between the clients and appellee, as well as those between

appellant and the clients, may be California contracts.

4. Unlike a prima facie tort claim, the contractual interference claim under New York law does not require that the defendant's motivation be to injure the plaintiff; it requires only an intent to interfere with the performance of a contract. See *Hornstein v. Podwitz*, 254 N.Y. 443, 447, 173 N.E. 674, 675 (1930); *Wegman v. Dairylea Cooperative, Inc.*, 50 A.D.2d 108, 113–114, 376 N.Y.S.2d 728, 735–36 (4th Dep't 1975), *motion for leave to appeal dismissed*, 38 N.Y.2d 918, 382 N.Y.S.2d 979, 346 N.E.2d 817 (1976); *Benton v. Kennedy-Van Suan Mfg. & Eng. Corp.*, 2 A.D.2d 27, 29, 152 N.Y.S.2d 955, 958 (1st Dep't 1956); *Avon Products, Inc. v. Berson*, 206 Misc. 900, 903, 135 N.Y.S.2d 867, 871 (Sup.Ct.1954).

that appellant did not have a chance to develop the New York case law or brief the question whether New York law was even applicable, *see* note 2 *supra* ; to amend its pleadings if necessary; or to develop the facts sufficiently to enable it to sustain its case on any legal theory other than "prima facie tort." Because such an opportunity is vital if the court is to make an informed decision whether to grant summary judgment, Fed.R.Civ.P. 56(c) requires that a motion for summary judgment be served at least ten days before a hearing is held.[5] While this rule applies expressly only to summary judgment motions by a party, "[w]e think the spirit of the rule requires the same notice and hearing where the court contemplates summary dismissal on its own motion." *Bowdidge v. Lehman*, 252 F.2d 366, 368–69 (6th Cir. 1958).

■ Appellee argues that one who seeks a preliminary injunction, as appellant did here, must be ready to show he is more likely than not to prevail on the merits and therefore must be fully armed with his legal theory and supporting factual premises. The Fifth Circuit, however, has rejected this proposition, and we agree with its reasoning:

[L]oss of a motion for preliminary injunction means only temporary lethality. Final judgment is not then a possibility. When such a limited adjudication is the order of the day, we cannot say with assurance that the parties will present everything they have. The very intimation of mortality when summary judgment is at issue assures us that the mo-

tion will be rebutted with every factual and legal argument available. *Georgia, Southern & Florida Railway v. Atlantic Coast Line Railroad*, 373 F.2d 493, 498 (5th Cir.), *cert. denied*, 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967). *Cf. Capital City Gas Co. v. Phillips Petroleum Co.*, 373 F.2d 128, 131 (2d Cir. 1967) (error to grant permanent injunction following hearing on motion for preliminary injunction, because parties not aware prior to hearing that final relief was to be granted).

The judgment is reversed, without prejudice to the right of either party to move for summary judgment at a later, more appropriate stage of the litigation.[6]

Reversed and remanded.

TIMBERS, Circuit Judge, concurring specially:

I concur in the judgment of the Court which remands the case to the district court for further proceedings, including appropriate summary judgment proceedings.

Since I do not agree, however, with certain aspects of Judge Oakes' opinion, I wish to so indicate in this special concurrence.

First, with deference to the author of the majority opinion, I find the characterization of the district court's action here as revolving door justice, resulting in propelling appellant out on the street, to be both unnecessary and inaccurate. Indeed, there is much to be said for according swift revolv-

5. The extended period for service of the motion is especially important in the Rule 56 context because it provides an opportunity for the opposing party to prepare himself as well as he can with regard to whether summary judgment should be entered. In theory, the additional time ought to produce a well-prepared and complete presentation on the motion to facilitate its disposition by the court. In addition, since opposition to a summary judgment motion often is a difficult task, usually involving preparation of both legal and factual arguments as well as

affidavits, and since the results of failure are drastic, it is felt that the additional time is needed to assure that the summary judgment process is fair.

10 C. Wright & A. Miller, *supra*, § 2719, at 451 (1973).

6. The implication of the "special concurrence" of Judge Timbers, to the effect that the majority has some doubt as to Judge Knapp's "conscientious determination to see that justice is done," is entirely unwarranted.

ing door treatment to many removed diversity cases. Here I have no doubt that the experienced district judge, who is thoroughly knowledgeable with respect to New York law, upon remand will carry out our mandate with his usual conscientious determination to see that justice is done.

Second, while I agree that appellant here was not given an adequate opportunity to prepare to meet the district court's sua sponte order granting summary judgment, I do not think it is necessary to incorporate the ten day notice provision of Fed.R.Civ.P. 56(c) into every such sua sponte summary judgment order. The rare case in which sua sponte summary judgment is appropriate may arise in such a manner that an accelerated determination can be made without unfairness to the parties. See *Healy v. James*, 319 F.Supp. 113 (D.Conn.1970), *aff'd*, 445 F.2d 1122, 1129 (2 Cir. 1971), *rev'd on other grounds*, 408 U.S. 169 (1972). I would continue to adhere to the practice in this Circuit of leaving the details of the timetable to the discretion of the district court in accordance with Professor Moore's flexible formulation: "[I]f the court contemplates entering summary judgment *sua sponte* the parties should at least be given the opportunity to prepare and submit materials on the question of summary judgment." 6 Moore's Federal Practice ¶56.12, at 56–339 (2 ed. 1976); cf. Fed.R.Civ.P. 12(b) and 12(c).