958 F.2d 24
 HISPANICS FOR FAIR AND EQUITABLE REAPPORTIONMENT (H-FERA),
Gladys Marrero, Luz Velez and Edwin Torres,
Plaintiffs-Appellants,
and
National Association for the Advancement of Colored People,
Inc., Marcia B. Hughes, Clarence Dent and Maxine
Hare, Intervenors-Plaintiffs-Appellants,
v.
James D. GRIFFIN, Common Council of the City of Buffalo,
City of Buffalo and Board of Elections of Erie
County, Defendants-Appellees.
 Nos. 865, 864, Docket 91-7850, 91-7968.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 30, 1992.
Decided Feb. 27, 1992.
 
 Arthur A. Baer, New York City (Ruben Franco, Kenneth Kimerling, Puerto Rican Legal Defense and Educ. Fund, Inc., New York City, David G. Jay, Buffalo, N.Y., on the briefs), for plaintiffs-appellants Hispanics for Fair and Equitable Reapportionment (H-FERA), Gladys Marrero, Luz Velez and Edwin Torres.
 Cheryl S. Fisher, Buffalo, N.Y. (Magavern & Magavern, Buffalo, N.Y., of counsel), for intervenors-plaintiffs-appellants Nat. Ass'n for Advancement of Colored People, Inc., Marcia B. Hughes, Clarence Dent and Maxine Hare.
 Carol E. Heckman, Buffalo, N.Y. (Paul K. Holbrook, Lippes, Kaminsky, Silverstein, Mathias & Wexler, Buffalo, N.Y., of counsel), for defendants-appellees James D. Griffin, Common Council of the City of Buffalo and City of Buffalo.
 Before VAN GRAAFEILAND, WALKER and McLAUGHLIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Two minority organizations and several individuals appeal from a judgment of the United States District Court for the Western District of New York (Elfvin, J.) dismissing appellants' complaints alleging unlawful gerrymandering of councilmanic districts in the City of Buffalo. We vacate and remand.
 
 
 2
 On June 27, 1991, Hispanics for Fair and Equitable Reapportionment ("H-FERA") commenced an action in Supreme Court, Erie County, alleging that the defendants had redistricted the Niagara and Ellicott councilmanic districts in such a way as to divide the bulk of the Buffalo Hispanic population between the two districts. It contended that this was done without giving proper and adequate notice and in violation of the Hispanics' rights under the Constitution, the Civil Rights Act, 42 U.S.C. § 1983, and the Voting Rights Act, 42 U.S.C. § 1973 et seq. On June 28, 1991, the action was removed to the United States District Court for the Western District of New York, and on July 15, 1991, a motion to intervene made by the National Association for the Advancement of Colored People, Inc. ("NAACP") was granted. The NAACP complaint is similar in substance to that of the H-FERA, except that it is directed to the alleged dilution of African-American voting strength in the Fillmore district as a result of improper gerrymandering. The NAACP complaint also alleges that the gerrymandering was done with the deliberate and unlawful intent to dilute African-American voting strength in the Fillmore district. The Board of Elections has not appeared in the actions and takes no position with respect to the controversy.
 
 
 3
 Plaintiffs in both actions moved for preliminary injunctive relief. Their motions were scheduled for oral argument on July 24, 1991, and apparently were heard on that day. The record does not contain a transcript of the argument. As best we can determine, the district court did not decide the preliminary injunction motions. Instead, on August 5, 1991, it issued sua sponte a MEMORANDUM and ORDER dismissing the complaints. Although the only motions referred to in the MEMORANDUM and ORDER are plaintiffs' requests for a preliminary injunction, we assume, because of the district court's references to matters dehors the pleadings, that it intended its order to be a grant of summary judgment. Summary judgment should not be granted, however, unless the losing party has been given an opportunity to demonstrate that there are genuine material issues for trial. See, e.g., Fed.R.Civ.P. 56(c). This demonstration is for the benefit not only of the trial court but of this court as well, since we review the grant of summary judgment de novo. See Ogden Corp. v. Travelers Indemnity Co., 924 F.2d 39, 41-42 (2d Cir.1991). We cannot in good conscience affirm a summary judgment if we are not satisfied that the appellant had been given an opportunity upon notice to oppose the grant below.
 
 
 4
 According to the district court's docket sheet and an uncontroverted statement in the NAACP brief on appeal, the defendants did not move to dismiss the complaints. Although we do not know what took place during the July 24 preliminary injunction hearing, the district court's docket sheet contains no reference to a summary judgment motion, the motion does not appear in the record on appeal, and it has not been argued. Plaintiffs' preliminary injunction motion papers should not be treated as if they were a response to a motion for summary judgment. As we said in Herzog & Straus v. GRT Corp., 553 F.2d 789, 792 (2d Cir.1977) (quoting Georgia Southern & Florida Ry. Co. v. Atlantic Coast Line R.R. Co., 373 F.2d 493, 498 (5th Cir.), cert. denied, 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967)),
 
 
 5
 [l]oss of a motion for preliminary injunction means only temporary lethality. Final judgment is not then a possibility. When such a limited adjudication is the order of the day, we cannot say with assurance that the parties will present everything they have. The very intimation of mortality when summary judgment is at issue assures us that the motion will be rebutted with every factual and legal argument available.
 
 
 6
 Cases dealing with alleged racial and political gerrymandering are legion, and their factual permutations are both varied and important. The importance of factual concerns is evidenced in the instant litigation by the City's motion to depose Professor Henry Taylor, Jr., who submitted an affidavit in support of plaintiffs' motions for a preliminary injunction, which, the City said, "went to the very heart of the issues raised by Plaintiffs." Professor Taylor stated in his affidavit that the percentage of African-Americans in the Fillmore district increased from 3% in 1960 to 49% in 1990, and he predicted that by 1995 the Fillmore district would be predominantly African-American. The City requested that the Professor produce the documents prepared and utilized by him in arriving at this conclusion. The City also noticed the deposition of Hope Hoetzer-Cook, who submitted an affidavit alleging that the gerrymandering was racially motivated. Before either of these hearings took place, the complaints were dismissed. As de novo reviewers of the district court's order, we follow Herzog & Straus, supra, 553 F.2d at 792, and hold that there was insufficient notice and opportunity to be heard in the instant case.
 
 
 7
 Accordingly, although we realize that a plaintiff's road to success in cases such as the instant one is not a primrose path, see, e.g., Thornburg v. Gingles, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986), we believe that in the interests of justice, the plaintiffs herein, upon proper notice, should be given an opportunity to demonstrate the existence of material issues for trial. We express no opinion as to whether they can make this showing. We simply hold that they should be given this opportunity. Because of the firmness of the district judge's already expressed views, we conclude that the appearance of justice makes it appropriate that further proceedings be conducted by another judge. See United States v. Mendel, 746 F.2d 155, 164 (2d Cir.1984), cert. denied, 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985); United States v. Stein, 544 F.2d 96, 104 (2d Cir.1976).
 
 
 8
 We vacate the district court's judgment and remand the actions to Chief Judge Michael Telesca of the Western District of New York with instructions to refer the actions to another district court judge for further proceedings.