**FIRST FINANCIAL INSURANCE CO., Plaintiff,**

v.

**ALLSTATE INTERIOR DEMOLITION CORP., The Plaza Hotel, Plaza Operating Partners Ltd., Fairmont Hotel Mangmnt., L.P., New Plaza Assoc., L.L.C., and HRH Construction Interiors Inc., Defendants.**

**No. 96 Civ. 8243 (RLC).**

United States District Court, S.D. New York.

April 1, 1998.

---

Law Offices of John Lane, Glen Rock, NJ, for First Financial Ins. Co.; John C. Lane, of counsel.

Ponzini, Spencer & Geis, L.L.P., Tarrytown, NY, for Allstate Interior Demolition Corp.; Marianne Stecich, of counsel.

Jones, Hirsch, Conners & Bull, New York, NY, for HRH Construction Interiors Inc.; Steven H. Kaplan, of counsel.

### OPINION

ROBERT L. CARTER, District Judge.

This action for a declaratory judgment is brought by an insurer for rescission of a commercial insurance contract. The insurer seeks to rescind the contract on grounds that the insured made material misrepresentations in its application for insurance.

In response to the insurer's claims, the insured and a codefendant filed counterclaims. In addition, crossclaims were filed against the insured by a codefendant.

For reasons stated below, the insurer's motion for declaratory judgment is granted, as the counterclaims of the insured and the codefendant are unavailing. The crossclaims are dismissed without prejudice.

## I. BACKGROUND

For consideration of an annual premium of $10,122, plaintiff First Financial Ins. Co. ("First Financial") issued Commercial General Liability Insurance Policy No. F 0227 G 410187 (the "Policy") to defendant Allstate Interior Demolition Corp. ("Allstate"). (Complt. at 5). The policy had an effective period of one year, beginning March 14, 1996. *Id.*

Thereafter, Allstate commenced work under subcontract to codefendant HRH Construction Interiors, Inc. ("HRH") for the removal of two or more elevators at the Plaza Hotel (the "Plaza"). *Id.* at 5. On June 28, 1996 an accident occurred involving one of elevators being worked on by Allstate at the Plaza. *Id.* at 6.

As a result of the accident, defendants HRH and the Plaza made claims against Allstate for repair costs, lost revenues, and other damages in the amount of $402,981 plus interest. (Cntrclm. at 10). In turn, Allstate filed an insurance claim with plaintiff to cover the costs associated with the accident.

By letter of October 16, 1996, First Financial disclaimed coverage for the claims resulting from the accident. Plaintiff notified Allstate, the Plaza, and HRH that it was rescinding the policy and returned to Allstate its check for payment of the applicable premium. (Cmplt. at 6).

First Financial's rescission of the policy and disclaimer of coverage for the accident is based on Allstate's alleged misrepresentation of the nature of its work in its insurance application. *Id.* at 7. Allstate described its work as "Interior Demolition and Debris Removal Contractor" in its application for the

policy without making reference to its engagement in elevator removal work. *Id.* at 4. Yet, the accident arose from Allstate's engagement in just such work—that is, removal, or other work, involving elevators. *Id.* at 5–6.

First Financial contends that it would not have issued the policy in question had it known that Allstate was engaged in elevator removal work because it does not issue insurance policies for elevator related work. *Id.* at 7, 9–10. Consequently, First Financial contends that Allstate's failure to disclose its involvement in elevator work constitutes material misrepresentation, which is grounds for rescission under the terms of the policy at issue. *Id.* at 12.

Plaintiff's claim for rescission of the policy is also based on Allstate's alleged misrepresentation of its payroll in its application for insurance. In the application, Allstate represented its payroll for "Carpentry—Interior" at $60,000 and for "Garbage & Refuse Collection" at $30, 000. *Id.* at 5. Plaintiff alleges that these estimations were significantly understated. *Id.* at 8. This alleged misrepresentation was material, plaintiff argues, because Allstate's annual premiums on the policy would have been significantly higher, or the policy would not have been issued at all, had the payroll been stated accurately. *Id.*

Allstate admits that it "is engaged in interior demolition, which from time to time requires the removal and demolition of elevators." (Ans. at ¶ 32). It also admits that its application "made no specific reference to elevator removal work." *Id.* at ¶ 16.

Allstate denies, however, that its failure specifically to disclose its involvement in elevator works constitutes material misrepresentation. *Id.* at ¶ 33. It argues that the incomplete application was not a material misrepresentation because the source of the misrepresentation was extrinsic to Allstate. Allstate argues that the classification manual used to determine its schedule of hazards by the brokerage firm through which it purchased the policy is to blame for the omission. (Affidavit of Marianne Stecich at 1).

Allstate also denies that its statements concerning annual payroll constitute material representation. This denial is based on a claim by the company's comptroller that the payroll figure cited in the application was not meant to reflect the payroll for Allstate's entire staff of 12 to 15 people. (Affidavit of Anthony Persico, at 1–2). Rather, it was meant to be and is an accurate estimation of payroll for laborers only, which on average constituted 4 people during the relevant period. *Id.*

Co-defendant HRH also denies that Allstate's application for the Policy contains material misrepresentations. (Affidavit of Steven H. Kaplan, at 3).

## II. DISCUSSION

### A. Plaintiff's Claim for Rescission of the Insurance Contract

 The court's determination as to the merits of the plaintiff's claim for a declaratory judgment rescinding the insurance policy at issue turns primarily on two averments by Allstate. Specifically, while Allstate claims not to have made any misrepresentations of a material nature in its application for the policy in question, it does not deny that it occasionally engages in work involving the removal of elevators. Nor does it deny that the accident occurred while it was engaged in such labor.

Allstate's admission that it engages in elevator removal work settles the question of whether its application contained a misrepresentation. In light of this averment, the court finds Allstate's contention that it did not misrepresent the nature of its work in its insurance application to be merely a conclusory statement insufficient to overcome the clear meaning of the relevant documentary evidence. *See Ehrlich v. American Moninger Greenhouse,* 26 N.Y.2d 255, 309 N.Y.S.2d 341, 257 N.E.2d 890, 892 (1970) (conclusory statements of fact or law are insufficient to meet party's burden of proof). This omission amounts to misrepresentation because the meaning of Section VI of the Commercial General Liability Coverage Form, in which Allstate pledged that the representations made in its insurance application were "accu-

rate and complete," is unambiguous in nature.[1]

Under applicable law, the court is obliged to interpret Section VI in a manner consistent with its clear meaning. *See Mallad Construction Corp. v. County Fed. Savings & Loan Assoc.*, 32 N.Y.2d 285, 344 N.Y.S.2d 925, 298 N.E.2d 96, 99–100 (1973) ("The courts have declared on countless occasions that it is the responsibility of the court to interpret written instruments. The problem of analysis of the instrument is to determine what is the intention of the parties as derived from the language employed.") (citations omitted). Interpreting this provision on its face, the court finds the omission in question entirely inconsistent with Allstate's obligations under the insurance contract into which it entered with the plaintiff. By failing to reveal that it engaged in elevator removal work, Allstate failed to met its obligation under Section VI of the policy to provide "accurate and complete" representations.[2]

Having determined that misrepresentation occurred, the critical issue before the court is whether it was so significant that plaintiff's rescission of the policy is proper as a matter of law. The court finds that the rescission was justified under the applicable standard of review.

Although rescission is an extraordinary remedy for breach of contract, federal and state courts within the Second Circuit permit parties to rescind contracts when the breach that precipitates it is of a material nature. *See Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir.1980) ("Rescission is not appropriate where the failure was not a breach going to the root of the contract.") (quoting *Direction Assoc. Inc. v. Programming and Systems Inc.*, 412 F.Supp. 714, 719 (S.D.N.Y.1976) (Weinfeld, J.)); *Callanan v. Powers*, 199 N.Y.

268, 92 N.E. 747, 752 (1910) ("It [rescission] is not permitted for a slight, casual, or technical breach, but ... only for such as are material and willful, or if not willful, so substantial as to defeat the object of the parties making the contract."). Under the test applicable in this circuit, then, the court's inquiry as to whether rescission is warranted turns on the particulars of the contract at issue and the circumstances surrounding the breach.

■ The facts of this case support the insurer's right to rescind the policy in question. Like every other insurer, First Financial's ability to make informed decisions about whether and at what rate to provide coverage to commercial enterprises depends entirely upon the accuracy and completeness of its assessment of the risks associated with insuring these entities. By failing to indicate its involvement in elevator removal work, Allstate denied First Financial the ability to make an informed determination about the hazards associated with insuring it. Since plaintiff states that it does not issue insurance policies for the type of work in which Allstate was involved during the accident, Allstate's omission enabled it to obtain an insurance policy that it otherwise would not have obtained. Misrepresentation that produces such a result is clearly material in nature, thus justifying rescission. *See See Ris v. National Union Fire Ins. Co.*, 1989 WL 76199 (S.D.N.Y., July 6, 1989) (Owen, J.) (stating that test for materiality is whether failure to provide true answer "defeats or seriously interferes with the exercise of the insurance company's right to accept or reject the application" or whether the insurer "has been induced to accept an application which it might otherwise have refused") (quoting *Cohen v. Mutual Benefit Life Ins. Co.*, 638

---

1. This section reads:
 6. Representations.
 By accepting this policy, you agree:
 a. The statements in the Declaration are accurate and complete;
 b. Those statements are based upon representations you made to us; and
 c. We have issued this policy in reliance upon your representations.

2. The court notes with interest Allstate's suggestion that the blame for the omission of its en-

gagement in elevator work in its insurance application lies wholly or in part with Neil Wallach, an agent of S & H Insurance Brokerage, through which Allstate purchased the policy at issue. *See* Affidavit of Marianne Stechich (March 3, 1997) at 1–2. However, the actions of Wallach and his firm are beyond the scope of this litigation. For reasons upon which the court can only speculate, neither Allstate nor any other codefendant has attempted to make the brokerage firm a party to this case.

F.Supp. 695, 697 (E.D.N.Y.1986)); *Callanan v. Powers*, 92 N.E. at 752.

Because Allstate's misrepresentation was material in nature, the plaintiff is entitled to and the court hereby issues a declaratory judgment that it properly rescinded and properly disclaimed coverage under the policy at issue for the June 28, 1996 accident at the Plaza. The policy is void *ab initio*. First Financial is not obligated to defend or indemnify Allstate for damages caused by it as a result of the accident, or for any suit brought against it because of the accident.

## B. Defendants' Counterclaims

### 1. Claims by Allstate

Denying the allegations of plaintiff's complaint, Allstate filed several affirmative defenses and counterclaims, including a demand for punitive damages. The counterclaims allege breach of contract; breach of the duty of good faith and fair dealing; tortious interference with its contractual relationship with HRH; tortious interference with its business relations; deceptive acts and practices; willful misrepresentation, and libel.[3] First Financial has moved for dismissal of these claims under Rule 12(b)(6), F.R.Civ.P.

Based upon the foregoing discussion of Allstate's material misrepresentation of the nature of its work in its application for the insurance policy in question, the court finds Allstate's affirmative defenses and counterclaims to be without merit. Specifically, the counterclaim for breach of contract is contravened by the court's finding that it is Allstate, rather than the plaintiff, who unlawfully breached the insurance contract at issue. Because the court has determined as a matter of law that Allstate's material misrepresentation entitles First Financial to rescind the contract at issue, it follows that Allstate's remaining claims, namely, for breach of the duty of good faith and fair dealing; tortious interference with its contractual relationship with HRH; tortious interference with its business relations; deceptive acts and practices; willful misrepresentation, and punitive damages, also must fail. This determination presupposes that there is no basis in law or fact to substantiate Allstate's claims of wrongdoing on the part of First Financial.

Thus, the relief that Allstate requests cannot be granted.

### 2. Claims by HRH

Codefendant HRH also filed counterclaims against the plaintiff on the ground that First Financial has waived its right to rescind the contract at issue and is estopped from disclaiming coverage under it. As an additional insured under the policy at issue, HRH seeks indemnification from First Financial regarding any liability that it may incur as a result of the accident.

While HRH is named an additional insured under the policy, the court finds no basis in law for HRH's claims to indemnification by First Financial. Several provisions of the policy contradict HRH's claim. For example, sections 2(j)(5) and 2(j)(6) of the insurance policy exclude from coverage property damage by the insured (or subcontractors) if it arises out of work operations of a faulty nature.[4] This provision denying coverage for faulty operations by the insured is applicable to the accident for which HRH claims coverage.

Moreover, section I.A.(1) of the policy, which disclaims "obligation or liability to pay sums or perform acts and services" unless "explicitly provided for" in the agreement, undercuts HRH's claim to indemnification by the plaintiff. This provision suggests that First Financial is not obligated to indemnify

---

**3.** The claim for libel subsequently was withdrawn.

**4.** 2. Exclusions.
This insurance does not apply to:

. . . . . .

j. Damage to Property
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of these operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

HRH if Allstate breached an agreement to procure insurance that it may have entered into as a subcontractor to HRH because such an agreement was *extrinsic to the policy in question.*

■ In any event, section I.A.(1)(b)(2) of the policy states that insurance coverage applies only to property damage that occurs during the "policy period." Since the court's instant ruling that the controverted policy is void *ab initio* applies retroactively, it would not be possible, in any case, for HRH to recover under it. *See Callanan v. Powers,* 92 N.E. at 753 ("The right to rescind depends on the situation at the time the action is commenced, and, if the right exists then, no subsequent act of the party in default without the consent of the plaintiff can defeat it. When rescission is decreed, the judgment of rescission relates back to the commencement of the action, and the rights of the parties depend on the facts as they then existed.").

■ The court's conclusion that judicial rescission of the policy disqualifies HRH from indemnification by First Financial is buttressed by another of the policy's provisions. Section IV.3 states that no organization has a right to sue the plaintiff pursuant to the policy "unless all of its terms have been fully complied with." This provision is significant in light of the court's judgment in plaintiff's favor because it is based on a conclusion that Allstate's failure to disclose its involvement in elevator removal work was a failure per se to meet its contractual obligations under the policy. The fact that Allstate has not complied with the terms of the policy extinguishes HRH's rights to recovery from the plaintiff.

Absent other proof that First Financial and HRH entered into "insured contract" or other relevant agreement extrinsic to the policy at issue,[5] these provisions relieve First Financial of responsibility for damages incurred by HRH relative to the Accident. Therefore, First Financial is not obligated to defend or indemnify HRH for damages caused as a result of the accident.

## C. HRH's Crossclaims

HRH also has filed crossclaims against Allstate for breach of contract to procure insurance. It seeks a declaration obliging Allstate to indemnify it and hold it harmless with respect to all costs and any liability that it may incur as a result of this action.

HRH may have a valid claim against Allstate arising from the accident. This supposition is based on the court's conclusion that HRH's claim under the policy to coverage for the accident as an additional insured is defeated by material misrepresentation by Allstate. If HRH's subcontracting agreement with Allstate to perform work at the Plaza included a requirement to procure insurance, then it follows that Allstate may be liable to HRH for breach of contract (or for a claim sounding in tort). If such an agreement existed between Allstate and HRH at the time of the accident, HRH would have a remedy at law against Allstate for any liability that it may incur as a result of the accident.

At this time, however, HRH has presented no evidence, either intrinsic or extrinsic to the rescinded insurance policy, that it entered into an indemnification and hold harmless agreement with Allstate that was applicable to and effective at the time of the accident. Nor has HRH raised the issue of or presented evidence relating to Allstate's potential tort liability with respect to the accident. Because it has not been properly presented to the court, HRH's crossclaim is dismissed without prejudice.

IT IS SO ORDERED.

---

5. Section I.A. (2)(b) of the policy, which lists exclusions from coverage, specifically states that these provisions are not applicable in cases where the insured has entered into an "insured contract" or other agreement assuming liability with another party.