FIRST FINANCIAL INSURANCE COMPANY, Plaintiff–Counter Defendant–Appellee,

v.

ALLSTATE INTERIOR DEMOLITION CORP., Defendant–Cross Defendant– Counter Claimant–Appellant,

HRH Construction Interiors, Inc., De-fendant–Cross Claimant–Counter Claimant–Appellant,

The Plaza Hotel; Plaza Operating Part-ners, Ltd; Fairmont Hotel Manage-ment, L.P. and New Plaza Associates, L.L.C., Defendants.

Nos. 98–7660(L), 98–7689(CON).

United States Court of Appeals, Second Circuit.

Argued: May 19, 1999.

Decided: Sept. 17, 1999.

**110**

Marianne Stecich, of counsel, Ponzini, Spencer & Geis, L.L.P., Tarrytown, NY, for Defendant–Cross Defendant–Counter Claimant–Appellant Allstate Interior Demolition Corporation.

John C. Lane, Law Offices of John C. Lane, Glen Rock, NJ, for Plaintiff–Counter Defendant–Appellee First Financial Insurance Company.

Steven H. Kaplan, Jones Hirsch Connors & Bull P.C., New York, NY, for Defendant–Cross Claimant–Counter Claimant–Appellant HRH Construction Interiors, Inc.

* The Honorable Colleen McMahon, of the United States District Court for the Southern District of New York, sitting by designation.

Before: McLAUGHLIN and JACOBS, Circuit Judges, and McMAHON,* District Judge.

McMAHON, District Judge:

Defendant–Appellants Allstate Interior Demolition Corporation and HRH Construction Interiors, Inc. appeal from a decision of Judge Robert L. Carter, dated April 2, 1998, that *sua sponte* granted summary judgment for plaintiff-appellee First Financial Insurance Company on its claim for declaratory judgment. They also appeal from a second decision, dated September 3, 1998, denying their motions for reconsideration of the April 2nd decision. We conclude that the district court's *sua sponte* grant of summary judgment for First Financial was both procedurally and substantively erroneous, and accordingly we vacate the judgment and remand for further appropriate proceedings.

## BACKGROUND

Defendant–Appellant Allstate Interior Demolition Corporation is a New York corporation with its principal place of business in Maspeth, New York. Allstate, as its name suggests, engages in the demolition of building interiors and the removal of debris therefrom. It does this work, often as a subcontractor, in Manhattan and the surrounding metropolitan area.

Plaintiff–Appellee First Financial Insurance Company (FFIC) is an insurance company incorporated in Illinois and licensed by the state of New York to do business there.

FFIC issued Commercial Lines Policy Number F 0227 G 410187 to Allstate Interior Demolition Corporation for a one-year period beginning March 14, 1996, for an annual premium of $10,122. The policy covered all of Allstate's operations as an "Interior Demolition and Debris Removal Contractor." The policy was not taken out

in contemplation of any specific demolition job.

The application for insurance included several questions related to the nature of the applicant's work. One section asked the applicant for its "Nature of Business/Description of Operations," which Allstate described as "Interior Demolition & Debris Removal Contractor." Another section, entitled "Schedule of Hazards," asked the applicant to designate classifications and corresponding classification codes, presumably from an insurance underwriters' manual. Allstate's application listed the hazard classifications and classification codes for "Carpentry—Interior" and "Garbage & Refuse Collection." The last section of the insurance application asked specific questions pertaining to specific risks, such as: "Any exposure to radioactive materials?," "Machinery or equipment loaned or rented to others?," and "Any watercraft, docks, floats owned, hired or leased?" Two of the questions are pertinent to the present controversy: "Any structural alterations contemplated?," and "Any demolition exposure contemplated?" Allstate answered "Yes" to both.

FFIC approved the application and issued the policy under the risk classification codes Allstate had designated.

Approximately two months after taking out the insurance policy, Allstate entered into a contract with HRH Construction Interiors, which was under contract to do extensive renovation work at the Plaza Hotel. HRH subcontracted with Allstate to remove and dispose of two freight elevator cars, pulleys, cable weights, machines and motors, beams, doors and frames. Allstate began its work under the subcontract in June 1996.

On June 28, 1996, while Allstate employees were removing the elevator cars from the Plaza, the cable weights fell approximately sixteen floors, causing damage to the floors and walls of the first floor, basement and sub-basement, as well as to electrical wires and water pipes in the hotel. As a result of the accident, HRH and the Plaza Hotel asserted claims against Allstate for repair costs, lost revenues and other damages, in the amount of $402,981 plus interest. Allstate in turn filed an insurance claim with FFIC to cover the costs associated with the accident.

On October 16, 1996, FFIC disclaimed coverage for the claims resulting from the accident. It also notified Allstate—and HRH and the Plaza—that it was rescinding Allstate's insurance policy, and returned its check for payment of the policy premium. FFIC claimed that Allstate had made material misrepresentations in its application for insurance by describing its business as "interior carpentry" and "refuse removal" and by failing to state explicitly that its work included elevator removal.

On November 1, 1996, FFIC commenced this action for a declaratory judgment that it was entitled to rescind its insurance policy with Allstate on the ground of material misrepresentation. FFIC asserted that the insurance policy it had issued to Allstate, under which HRH was an additional insured, was void *ab initio* because Allstate had misrepresented the nature of its business in two ways: first, by failing to give a complete and accurate description of its work, and second, by failing to disclose affirmatively to First Financial that it sometimes engaged in elevator removal. FFIC asserted that it did not issue insurance policies for the removal of elevators, or for any other work involving elevators, and claimed that it would not have issued the policy to Allstate if it had known that Allstate would be removing elevators as part of its demolition work.[1] In addition to Allstate, FFIC's

---

1. FFIC also claimed that Allstate significantly understated its annual payroll figures on the insurance application and asserted that it might not have issued the insurance policy if

Allstate had accurately and correctly represented its payroll. However, this claim was not addressed by the district court; only the

Complaint named HRH Construction Interiors and various Plaza Hotel entities as defendants. HRH is a New York corporation. The Plaza Hotel, Plaza Operating Partners Ltd., Fairmont Hotel Management, L.P. and New Plaza Associates, L.L.C. are all business entities organized and existing under the laws of the State of New York.

Allstate responded to the Complaint with eight counterclaims, including breach of contract, breach of covenant of good faith and fair dealing, libel, misrepresentation, tortious interference with contract, tortious interference with business relations and deceptive acts or practices in violation of New York General Business Law § 349. For its libel claim, Allstate asserted the following:

37. "On October 16, 1996, plaintiff [FFIC] maliciously published the following statements about ALLSTATE:"

PLEASE BE ADVISED THAT FIRST FINANCIAL INSURANCE COMPANY HEREBY DISCLAIMS COVERAGE FOR THE ABOVE CAPTIONED CASUALTY AND, FURTHER, HEREBY DECLARES THE POLICY NUMBER F 0227 G 410187 TO BE VOID *AB INITIO*, BASED UPON MATERIAL MISREPRESENTATIONS MADE BY ALLSTATE INTERIOR DEMOLITION CORP. IN ITS APPLICATION FOR THE ISSUANCE OF THE POLICY, AS MORE FULLY ADDRESSED BELOW.

* * * *

NOWHERE IN THE APPLICATION DID ALLSTATE DISCLOSE THAT IT WOULD BE ENGAGED IN ELEVATOR DEMOLITION OR, INDEED, WORK IN ANY WAY RELATED TO ELEVATORS. TO THE CONTRARY, ALLSTATE REPRESENTED THAT ITS WORK RELATED TO INTERIOR CAR-

alleged failure to disclose elevator removal

PENTRY AND TO GARBAGE AND REFUSE COLLECTION.

THIS IS A MATERIAL MISREPRESENTATION OF THE NATURE OF ALLSTATE'S WORK....

THE COMPANY ALSO BELIEVES THAT ALLSTATE MISREPRESENTED ITS PAYROLL, FOR PREMIUM BASIS PURPOSES.

* * * *

FIRST FINANCIAL INSURANCE COMPANY HAS DETERMINED THAT MATERIAL MISREPRESENTATIONS WERE KNOWINGLY MADE IN THE APPLICATION OF ALLSTATE INTERIOR DEMOLITION CORP. FOR ISSUANCE OF POLICY NUMBER F 0227 G 410187, AS SPECIFIED ABOVE.

Allstate contended that this statement was sent to HRH and to the Plaza Hotel, that the accusation about misrepresentation was false and that FFIC knew at the time it published the statement that it was false. It claimed damages for injury to its good business name and reputation.

HRH asserted one counterclaim against FFIC, seeking a declaration that it was insured under the policy and that, as an innocent insured, FFIC was obligated to defend and indemnify it with respect to any claim or action arising out of the accident at the Plaza. HRH also cross-claimed against Allstate for breach of contract to procure insurance, and for a declaration that Allstate was obligated to indemnify and hold HRH harmless with respect to any liability arising out of the work at the Plaza. The various Plaza Hotel entities named as defendants did not appear.

On February 10, 1997, FFIC made a motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss four of Allstate's counterclaims. FFIC argued that

work is relevant to this appeal.

each of the challenged counterclaims failed to state a cause of action. With regard to the counterclaim for libel, FFIC argued that Allstate had admitted in its Answer the truth of the very statement alleged to be defamatory—namely, that Allstate did elevator removal work from time to time and that it did not disclose that work when it applied for insurance.

In response to FFIC's motion to dismiss its libel counterclaim, Allstate contended that it had accurately described the nature of its business (as "Interior Demolition & Debris Removal Contractor"). It further stated that not specifically mentioning elevator removal work was not a misrepresentation, because the industry understood the term "Interior Demolition" to encompass removal of any items from a building's interior. Allstate also argued that it had selected appropriate risk classification codes, namely "Carpentry—Interior" and "Garbage & Refuse Collection," from among those listed in the Commercial General Liability (CGL) underwriting manual used by insurance brokers. Allstate noted that there was no specific risk classification for interior demolition, and claimed that evidence would show that insurance brokers routinely used "Carpentry—Interior" to classify such work. While the CGL manual (like FFIC's own Commercial Underwriting Manual) contained a classification for "elevator work," that classification specified only elevator/escalator inspection, installation, servicing or repair. It made no mention of elevator demolition or removal. Allstate argued that it had correctly used the "Interior Demolition" description and the "Carpentry—Interior" risk classification.

At the time FFIC made its Rule 12(b)(6) motion, the parties had not commenced discovery. Allstate offered no evidence in support of its contentions that the insurance application was filled out accurately and that "Interior Demolition" was understood in the industry to encompass all types of demolition, including elevator removal. Allstate did not believe it was required to do so; as stated in its memorandum of law, "As the Court is aware, on a Rule 12(b)(6) motion, the factual allegations of the [C]omplaint [or, in this case, the Answer, which contained the counterclaims] must be presumed to be true, . . . and the motion should be denied 'unless it appears beyond doubt that the [claimant] can prove no set to facts in support of his claim which would entitled [sic] him to relief.' "

On April 2, 1998, the district court issued a decision in response to FFIC's Rule 12(b)(6) motion to dismiss the counterclaims. However, that decision did not directly address the merits of the motion that had been submitted to the court. Instead, the district court granted what it called "the insurer's motion for declaratory judgment." *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 14 F.Supp.2d 302, 303 (S.D.N.Y.1998). After effectively converting FFIC's motion to dismiss counterclaims into a motion for summary judgment on the Complaint, the court concluded as follows: "Allstate's admission that it engages in elevator removal work settles the question of whether its application [for insurance] contained a misrepresentation." *Id.* at 304. The district court ruled that this misrepresentation was material because FFIC had represented that it did not issue insurance policies for elevator removal work. *Id.* at 305. Thus, the court voided the insurance policy *ab initio* and held that FFIC was not obligated to defend or indemnify Allstate. *Id.* at 306.

Having declared the insurance policy invalid, the court ruled that all of Allstate's counterclaims and HRH's counterclaim were without merit—even though FFIC had not moved to dismiss all of Allstate's counterclaims or HRH's counterclaim.

Believing that the district court had misunderstood the nature of First Financial's motion, Allstate moved for an amendment of the court's opinion pursuant to Federal Rule 59(e), and for reconsideration pursuant to Rule 6.3 of the Local Civil Rules. Arguing that it had evidence to support its

position that "Interior Demolition" includes the removal of anything within the four walls of a building, including elevators, Allstate submitted the testimony of its insurance broker, Neil Wallach, who had been deposed while FFIC's Rule 12(b)(6) motion was pending. Mr. Wallach testified that the term "interior demolition," which Allstate had used on the application to describe its business, is understood in the insurance business to include the removal of anything within the four walls of a building. Allstate also attached excerpts from FFIC's Commercial Underwriting Manual to its motion. The excerpts showed that the manual contained no risk classification code for "elevator removal;" nor did it contain a risk classification code for "interior demolition." Allstate contended that it had been effectively prevented from submitting this evidence because the district court decided the case on the merits without first notifying defendants of its intention.

HRH also moved for reconsideration; it asked the court to issue a new opinion, pursuant to Federal Rule 60(b), limited to the specific counterclaims that were the subject of the plaintiff's original motion.

The motions for reconsideration were denied. The district court found that the standards for relief from a judgment under Rule 60(b) or for reconsideration under Rule 59(e) and Local Rule 6.3 had not been met, and that the defendants had had "ample notice and opportunity to counter the evidence upon which plaintiff based its motion for declaratory judgment." *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, No. 96–CIV–8243, 1998 WL 567900, at *2 (S.D.N.Y. Sept. 3, 1998).

This appeal followed.

## DISCUSSION

■ We review the district court's grant of summary judgment *de novo*. *See Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996); *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir.1996).

■ Appellants Allstate and HRH argue that the district court erred in granting summary judgment because the only motion before the court was a pre-discovery motion to dismiss four counterclaims made pursuant to Federal Rule of Civil Procedure 12(b)(6)—not a "motion for declaratory relief," as stated by the court— and Allstate, the losing party, was not afforded the opportunity to show that there were material issues of fact in dispute, since the parties were given no notice that the court would be deciding the case on the merits. Appellants further argue that the district court committed a substantive error, both in concluding that Allstate's non-disclosure that it sometimes removes elevators in the course of its interior demolition work constituted a misrepresentation on its application for insurance, and in ruling that FFIC had shown that such misrepresentation was material.

We agree that the district court's *sua sponte* grant of summary judgment was improper. We therefore vacate that order and remand so that discovery may continue and the action be adjudicated in due course.

■ District courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, this is true only "... so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548; *see also Hispanics for Fair and Equitable Reapportionment v. Griffin*, 958 F.2d 24, 25 (2d Cir.1992) (*per curiam*) ("[s]ummary judgment should not be granted ... unless the losing party has been given an opportunity to demonstrate that there are genuine material issues for trial"); *accord Vitello v. Ambrogio*, 130 F.3d 59, 60 (2d Cir.1997); *Ramsey*, 94 F.3d at 73–74; *Herzog & Straus v. GRT Corp.*, 553 F.2d 789, 791–92 (2d Cir.1977). "Where it appears clearly upon the record that all of

the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law." *Ramsey,* 94 F.3d at 74 (citing *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991)).

In *Ramsey, supra,* this Court reversed a *sua sponte* award of summary judgment to non-moving defendants in response to plaintiff's motion for summary judgment. We reversed because we did not know whether all materials obtained in discovery were before the Court. The Court recognized that, if a motion for summary judgment has been made, a district court may grant summary judgment to any party— including a non-movant. But we said that "care should, of course, be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." *Ramsey,* 94 F.3d at 73–74 (quoting 6 James W. Moore, Moore's Federal Practice ¶ 56.12, at 56–165 (2d ed.1995)). The Court went on to state that:

> Before granting summary judgment *sua sponte,* the district court must assure itself that following the procedures set out in Rule 56 would not alter the outcome. Discovery must either have been completed, or it must be clear that further discovery would be of no benefit. The record must, therefore, reflect the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment.

*Ramsey,* 94 F.3d at 74.

In this case, the procedural safeguards that should attend an award of summary judgment were not offered to Appellants.

See, *e.g., Ramsey,* 94 F.3d at 74; *Vitello v. Ambrogio,* 130 F.3d at 60. The motion before the district court was not a motion for summary judgment addressed to the merits of FFIC's claim. It was a motion to dismiss selected counterclaims. At some point, the district court deemed it appropriate to convert the motion to one for summary judgment on the underlying claim, but he gave the parties no notice of that fact and, thus, no opportunity to supplement the record with evidence that might create an issue of fact.

■ FFIC cites this Court's decision in *Coach Leatherware, supra,* for the proposition that a court need not give notice of its intention to enter summary judgment against a non-moving party. This statement is true when a summary judgment motion has in fact been made, because the parties are then on notice that ultimate issues are before the court. Thus, as long as some party has made a motion for summary judgment, a court may grant summary judgment to a non-moving party, provided that party has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried. The following cases, all of which were cited by the district court, so hold: *Coach Leatherware, supra, Ramsey, supra,* and *Goldstein v. Fidelity & Guaranty Ins. Underwriters, Inc.,* 86 F.3d 749, 750–51 (7th Cir.1996). See *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.,* 1998 WL 567900, at * 1.

Here, however, no party had made a summary judgment motion. The motion that FFIC had made was addressed to the pleadings. All that Allstate had to show to defeat that motion was that its Answer and counterclaims alleged facts to support one or more of those counterclaims—i.e, facts that, if proven, would allow it to recover under *some* theory. See *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "When such a limited adjudication is the order of the day, we cannot say with assurance that the parties will present everything they have. The very inti-

mation of mortality when summary judgment is at issue assures us that the motion will be rebutted with every factual and legal argument available." *Herzog & Straus*, 553 F.2d at 792 (quoting *Georgia, Southern & Florida Railway v. Atlantic Coast Line Railroad*, 373 F.2d 493, 498 (5th Cir.), *cert. denied*, 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967)). As Allstate points out, "there is a huge difference between losing on a counterclaim and losing the whole case." The district court's failure to apprise the parties that it might dispose of the entire case prevented them from submitting all the evidence and arguments they could have and clearly would have.

■ FFIC argues that the misrepresentation issue at the heart of the case was in fact addressed by both sides in their motion papers—in relation to Allstate's libel counterclaim and FFIC's truth defense— and that Allstate was not, therefore, prejudiced by the district court's unannounced granting of summary judgment on that ground. As Allstate points out, however, it made a limited argument in response to FFIC's motion to dismiss its libel counterclaim. Allstate represented that *it would show, as discovery progressed,* that its admitted non-disclosure of the fact that it occasionally removed elevators did not rise to the level of misrepresentation. Under the Federal Rules of Civil Procedure, Allstate was not required to offer evidence on that issue, because FFIC's motion to dismiss the counterclaims was addressed to the sufficiency of the pleadings. Such a motion is ordinarily to be decided "on the four corners" of the pleadings, without reference to extraneous evidence. *See, e.g., Newman & Schwartz v. Asplundh Tree*

*Expert Co.*, 102 F.3d 660, 662–63 (2d Cir. 1996).

In this particular case, the lack of opportunity for Allstate to present evidence outside the four corners of the pleadings before judgment was entered against it was highly prejudicial. Considerable evidence supporting Allstate's position had come to light during the thirteen months between submission of FFIC's motion to dismiss and the district court's decision. Much of that evidence was eventually placed before the Court when the motions for reconsideration were made. It strongly suggests that FFIC was not entitled to summary judgment on any number of grounds.

First, Mr. Wallach, the agent who filled out the application, did in fact testify that the term "interior demolition" is understood in the insurance industry to mean the removal of anything within the four walls of a building, whether that be sheetrock, plumbing fixtures, electrical wiring, or elevators. This testimony, had it been before the district court, would have sufficed to create a disputed issue of material fact concerning whether the statements in Allstate's insurance application were misrepresentations. The district court concluded that Allstate's failure to disclose that it removed elevators was a misrepresentation; Allstate argues that, in light of industry practice, its statement was factually correct. A jury could well see merit in Allstate's argument.

Second, during discovery, FFIC produced its Commercial Underwriting Manual to defendants. The manual contained only two classifications pertaining to elevators. One classification was for elevator manufacturing, and the other was for "elevator or escalator inspecting, installation, servicing or repair." Neither covered the removal of elevators.[2] This evidence con-

---

**2.** FFIC has argued that Allstate *knew* it did not issue insurance policies for any work having to do with elevators. FFIC says that its underwriting manual "demonstrates unmistakably that elevator work is uninsurable [by using the word 'No' under the classification for 'Elevator or Escalator Inspecting, Installation, Servicing or Repair']." We note two things. First, the underwriting manual was not a document to which Allstate had access prior to this lawsuit. In fact, it was the subject of a discovery dispute between the parties because FFIC designated it privileged. Thus, Allstate can hardly be charged with knowledge of its contents at the time it applied for insurance.

firmed the existence of disputed issues of fact as to what the proper risk classifications were for interior demolition work, in light of the categories from which Allstate could have chosen. Moreover, in another portion of the application, the "Schedule of Hazards," FFIC asked the applicant to supply risk classifications for the applicant's business from a schedule of risk classifications contained in CGL manuals used by insurance brokers and insurance companies. Allstate's application listed classifications for "Carpentry–Interior" and "Garbage & Refuse Collection." An affidavit from Allstate's attorney, submitted in opposition to FFIC's motion to dismiss the counterclaims, stated that Allstate expected to show after discovery that these risk classifications were chosen because the manual used by insurance underwriters did not have a specific classification for interior demolition, and that the standard practice among underwriters was to use the risk classification "Carpentry–Interior" to cover interior demolition. At his deposition, Mr. Wallach confirmed this to be a fact. The broker stated, "[b]ased on my knowledge and understanding ... the classification code interior carpentry is used by insurance companies for pricing purposes based upon the insurance company's knowledge and understanding that the insured engages in interior demolition."

Furthermore, regardless of whether "Carpentry—Interior" or "Garbage & Refuse Collection" were appropriate classification codes for the work Allstate did, the broker's testimony also indicated that "[t]he insured does not determine the classification code [that goes on the policy]. The insurance company determines the classification code and the rate that's associated with that." Mr. Wallach also stated, "[i]f an underwriter in my office or in any office is ... putting down a classification code, it is up to the insurance company to determine whether that code is appropriate based upon—this is my understanding—based upon a description of the operations. The insurance company has the final say as far as pricing, which is the code and the classification that's used from the code."

Third, it is not at all clear that Allstate was under an obligation to state explicitly that it sometimes removes elevators in the course of its interior demolition work. Under New York law, "nondisclosure of a fact concerning which the applicant has not been asked does not ordinarily void an insurance policy absent an intent to defraud." *H.B. Singer, Inc. v. Mission National Ins. Co.*, 223 A.D.2d 372, 636 N.Y.S.2d 316, 316 (1st Dep't 1996); *accord. Sun Ins. Co. v. Hercules Sec. Unlimited, Inc.*, 195 A.D.2d 24, 605 N.Y.S.2d 767, 771 (2d Dep't 1993); *Boyd v. Otsego Mut. Fire Ins. Co.*, 125 A.D.2d 977, 510 N.Y.S.2d 371, 372 (4th Dep't 1986). "[A]n applicant is ordinarily permitted to remain silent on matters concerning which he is not questioned. His insurance policy may be voided for concealment only when he conceals matters material to the risk and he does so

---

Second, the underwriting manual is not nearly so favorable to FFIC's position as it urges. As noted, there are two classifications in the manual relating to elevators. One is entitled "Elevator Mfg." The other is entitled "Elevator or Escalator Inspecting, Installation, Servicing or Repair." Next to each, there are three columns designating the different kinds of insurance available—"Fire and Allied Lines," "General," and "Liability." For "Elevator Mfg.," the "General" and "Liability" columns contain the word "No," but the "Fire & Allied Lines" column contains a code—6810 (2). As for "Elevator or Escalator Inspecting, Installation, Servicing or Repair," again the "General" and "Liability" columns contain the word "No," but the "Fire & Allied Lines" column contains the following: § (2), FN 6. The Legend to the Classification Table notes that the " § " symbol denotes a "Multiple Classification," the meaning of which is somewhat unclear. The designation "FN" refers to the footnotes below the Classification Table, and FN 6 reads: "Equipment repair only, use code 0922. Equipment sales or storage, with or without repair, use code 0583." While we agree that none of the classifications covers elevator removal, we observe that FFIC's underwriting manual does *not* "demonstrate[ ] unmistakably" that every form of elevator work is uninsurable. In fact, it implies the opposite.

in bad faith with intent to deceive the insurer." *Boyd,* 125 A.D.2d at 977, 510 N.Y.S.2d at 372. This Court has frequently relied on this rule in refusing to rescind insurance policies on the basis of misrepresentations in an application for insurance. *See, e.g., Atlantic Mut. Ins. Co. v. Balfour MacLaine Int'l,* 85 F.3d 68, 81 (2d Cir. 1996) ("[T]he 'ordinary' insurance rule in New York applies, under which, absent fraud, the insured's failure to disclose a fact about which it was not asked is not grounds for avoiding the policy."); *Berger v. Manhattan Life Ins. Co.,* 805 F.Supp. 1097, 1104 (S.D.N.Y.1992) ("An insured has no obligation to volunteer information which is not directly asked for by the insurance company, nor can the answer to an ambiguous question be the basis for a claim of misrepresentation against the insured.") (citing *Vella v. Equitable Life Assurance Soc'y,* 887 F.2d 388, 393 (2d Cir. 1989)).

The application for insurance did ask certain questions about specific risks, one of which was, "Any demolition exposure contemplated?" Allstate answered "Yes" to this question. Significantly, FFIC did not ask any follow-up questions after receiving the application from Allstate. Neither did it question the risk classification codes Allstate's broker had designated in light of Allstate's indication that it contemplated demolition exposure. Had this information been proffered to the district court, at the very least it would have raised disputed issues of material fact on the issue of whether Allstate made misrepresentations in its application for insurance.

As this Court has recognized, "[b]ecause insurance contracts are inevitably drafted by insurance companies, New York law construes insurance contracts in favor of the insured and resolves all ambiguities against the insurer.... This [ ] rule applies to questions on insurance applications where the insurance company seeks to avoid liability by citing the answers thereto as misrepresentations." *Vella,* 887 F.2d

at 391–92 (citations omitted). FFIC asked Allstate the nature of its business. Allstate responded that it was an interior demolition and debris removal contractor. In assessing FFIC's claim that Allstate's response was a misrepresentation, the district court would have been required to view the facts in the light most favorable to Allstate and to draw all permissible inferences in its favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). There was no evidence before the district court that removal of elevators is not one of the activities typically performed by interior demolition contractors, and no inference that elevator removal is outside the scope of activities performed by such contractors was permissible. Similarly, no evidence was adduced by FFIC concerning the inapplicability of the risk classification codes designated by Allstate on its insurance application, or whether more appropriate codes were available. Therefore, the record contains no basis for inferring that the wrong codes were used.

The district court's failure to alert the parties of its intentions also prevented Allstate from making legal arguments in support of its position. For example, assuming that a reasonable jury could find some misrepresentation by Allstate, such misrepresentation is *material* under New York law only if it is shown that the insurer would not have written the insurance policy had the facts at issue been disclosed. *See Amrep Corp. v. American Home Assurance Co.,* 81 A.D.2d 325, 440 N.Y.S.2d 244, 247 (1st Dep't 1981); *Testa v. Utica Fire Ins. Co.,* 203 A.D.2d 357, 610 N.Y.S.2d 85, 85 (2d Dep't 1994). Under New York law,

No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless

knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.

New York Insurance Law § 3105(b) (McKinney 1985).

The burden is on the insurer to establish that it would have rejected the application if it had known the undisclosed information, and summary judgment cannot be granted unless the insurer comes forward with proof that it would not have issued the policy had it known the undisclosed facts. *See, e.g., Feldman v. Friedman,* 241 A.D.2d 433, 661 N.Y.S.2d 9, 9 (1st Dep't 1997); *Sonkin Assocs., Inc. v. Columbian Mut. Life Ins. Co.,* 150 A.D.2d 764, 541 N.Y.S.2d 611, 611 (2d Dep't 1989). Furthermore, the New York courts have consistently held that to meet the burden of proof on materiality, an insurer must submit evidence of its underwriting practices with respect to similar applicants. *See, e.g., Sonkin Assocs.,* 150 A.D.2d at 764, 541 N.Y.S.2d at 611; *Cutrone v. American Gen. Life Ins. Co.,* 199 A.D.2d 1032, 606 N.Y.S.2d 491, 491 (4th Dep't 1993). A court may not rely merely on statements by representatives of the insurer that it would not have issued the policy but for the representation. *See Feldman,* 241 A.D.2d at 433, 661 N.Y.S.2d at 9.

FFIC asserted in its Complaint that it would not have issued the policy if it had known about the occasional elevator removal work. However, it offered absolutely no *evidence* to support that assertion, either in support of its Rule 12(b)(6) motion or in opposition to the motions for reconsideration. The only documents before the district court on the motion to dismiss were the Complaint (and Amended Complaint), defendants' Answers and counterclaims, the insurance application and a portion of the policy of insurance, the memoranda of law, and affidavits from Allstate's attorney and from its Comptroller (on the alleged payroll misrepresentations). The district court wrote that FFIC "does not issue insurance policies for ele-

vator removal work," but it cited as support only FFIC's Complaint. FFIC's underwriting manual (for whatever it may be worth) was not before the court, nor had FFIC submitted testimony about its underwriting practices with respect to similar applicants. Nor did FFIC submit any evidence about underwriting practices in opposition to the motions for reconsideration.

Thus, even if Allstate's failure to mention elevator removal was a misrepresentation—a disputed issue of fact on the current state of the record—it would not necessarily justify rescission of the insurance policy under New York law. The evidence before the district court on the motion to dismiss, as well as on the motions for reconsideration, did not satisfy FFIC's burden of proving materiality. Allstate never had an opportunity to make this argument, however, because it never knew that the district court considered the ultimate issue in the case ripe for adjudication.

The court intimated in the opinion denying reconsideration that the parties could have submitted additional evidence and/or arguments in support of their positions, during the year between submission of FFIC's motion and the summary judgment decision. *See First Fin. Ins. Co. v. Allstate Interior Demolition Corp.,* 1998 WL 567900, at * 2. However, Allstate had no reason to submit evidence or arguments going to the merits of the underlying claim, because it had no reason to think that the underlying claim was being decided in the context of so limited a preanswer motion.

■ Thus, while there is no dispute that district courts have the inherent power to grant summary judgment *sua sponte,* an essential limitation on that power is that it may not be exercised unless the losing party had notice that it had to come forward with all of its evidence and arguments. *Celotex,* 477 U.S. at 326, 106 S.Ct. 2548. The district court's *sua sponte* grant of summary judgment on the Com-

plaint in response to FFIC's motion to dismiss counterclaims, without notice to the parties, precluded Allstate from presenting its evidence, and from arguing that the issue of material misrepresentation was not simply a question of law.

Having concluded that the district court erred in granting summary judgment without giving the parties notice that it was planning to do so, we need not consider whether it was error to deny the motions for reconsideration. We reverse and remand to the district court for further appropriate proceedings.