[605 NYS2d 767]

SUN INSURANCE COMPANY OF NEW YORK et al., Respondents-Appellants, v HERCULES SECURITIES UNLIMITED, INC., et al., Respondents, and MACY'S NORTHEAST, INC., et al., Appellants-Respondents.

Second Department, December 27, 1993

### APPEARANCES OF COUNSEL

*Lambert & Weiss,* New York City *(Monroe Weiss, Susan E. Jaffee, Mitchell J. Winn* and *Arthur N. Lambert* of counsel), for appellants-respondents.

*Mound Cotton & Wollan,* New York City *(Frederic R. Mindlin, Andrew C. Jacobson* and *Jay D. Kenigsberg* of counsel), for respondents-appellants.

OPINION OF THE COURT

BRACKEN, J. P.

■ In June 1989 three thieves conceived of a scheme to steal a large sum of money from an armored car company. Theirs was to be the ultimate "inside job" in that the three conspirators did not plan to accomplish the actual theft until after their "front man", Ronnie Bryser, had acquired control of the very armored car company from which they planned to steal. This criminal project went forward as planned, at least until November 12, 1989, when approximately $3,700,000 was stolen from the vault of the defendant Hercules Securities Unlimited, Inc. (hereinafter Hercules), the armored car company which Mr. Bryser had acquired pursuant to this scheme. The question which we must resolve on this appeal is whether the plaintiff Sun Insurance Company of New York (hereinafter Sun), which had issued an insurance policy to Hercules at the behest of Mr. Bryser, must reimburse various defendants who, as customers of Hercules, had the misfortune to have had their money on deposit with Hercules at the time of the theft. We conclude that because Sun's policy had been obtained by the conspirators after they had already entered into the conspiracy to commit the theft from Hercules, the theft coverage contained in that policy, as well as the coverage contained in an excess policy, was void *ab initio.* We therefore reverse and grant summary judgment to the plaintiffs.

The primary insurance policy at issue in this case had originally been issued to Titan Armored Car, Titan Courier Service, Inc., and Titan Security Systems, Inc. (hereinafter Titan). This policy was later amended so as to provide coverage to Hercules by virtue of an endorsement dated October 11, 1989, and made effective retroactively to August 17, 1989. The terms of the policy stated that it was intended to cover "the liability of [Hercules] * * * for loss of or damage to property * * * arising from any cause whatsoever, in transit or otherwise, including any act or omission of the Assured or any of its employees, or anyone acting in its service". Such loss was "payable to the assured and/or its customers as their respective interest may appear". The limit of Sun's policy was $1,000,000. A "cover note" issued by certain underwriters at

Lloyd's, London (hereinafter Lloyds), provided an additional $3,000,000 in excess coverage.

Sun and Lloyds commenced the instant action for declaratory judgment in 1990. The plaintiffs requested a judgment declaring "the Sun Policy and Lloyds Cover Notes 1 and 2 are void from the inception of coverage". The amended complaint named as defendants several parties who allegedly suffered property loss as the result of the theft from Hercules's vault. These parties, hereinafter referred to collectively as Hercules's "customers", included The Great Atlantic & Pacific Tea Company, Inc.; Gateway Cable; United Airlines, Inc.; Apcoa, Inc.; Acme Markets, Inc.; Sears Roebuck and Co., Inc.; First Fidelity Bank, N.A., New Jersey; Kings Supermarket, Inc.; Charles Freihofer Baking Company, Inc.; Union State Bank; Toys "R" Us, Inc.; Liberty Lines Transit, Inc.; Macy's Northeast, Inc.; United Jersey Bank; Grand Union Company, Inc.; Armored Car Company, Inc.; Investor's Savings & Loan; and Berkley Federal Savings and Loan.

In April 1990, the defendants Macy's Northeast, Inc. and Investor's Savings & Loan moved to dismiss the plaintiffs' amended complaint and for partial summary judgment with respect to certain counterclaims. Following the denial of this motion in an order dated August 15, 1990, these same defendants moved for "renewal and/or reargument", and Grand Union Company, Inc., Toys "R" Us, Inc., Kings Supermarket, Inc., and The Great Atlantic & Pacific Tea Company, Inc. joined in the motion for summary judgment. That motion was likewise denied in an order dated January 28, 1991. These motions were premised on the argument that the plaintiffs had a duty to reimburse Hercules's customers because the subject policies of insurance were untainted by any actual misrepresentation and because, even if there had been an actual misrepresentation so as to vitiate Hercules's right to recover, Sun and Lloyds would still have an independent duty to pay the loss suffered by Hercules's customers.

In April 1991 the plaintiffs moved for summary judgment. This motion was based on the proposition that Sun's policy had been procured as the result of deliberate fraud and that it was therefore void *ab initio*. According to Sun's attorney, the question of whether the insured (Hercules, through its principal, Mr. Bryser) committed fraud in obtaining the policy was no longer the valid subject of litigation because this question of fact had been conclusively resolved against Hercules in a Federal criminal prosecution which had successfully been

brought against Mr. Bryser and his coconspirators. Because of this fraud in the procurement of Sun's primary policy, it was argued that Sun's policy and Lloyds's excess policy are void.

The facts upon which Sun relied in demonstrating its entitlement to summary judgment were to a large extent established during the course of the Federal criminal prosecution. The essential allegations contained in the indictment which served as the basis for that prosecution, for the reasons stated below, must be taken as having been conclusively proved.

The first count of the Federal indictment charged that beginning on or about June 1, 1989, Ronnie Bryser, Gerald DeGerolamo, and Vincent DeGerolamo engaged in a conspiracy, the object of which was to "obtain the property of others, to wit, cash and other items of value, by means of a scheme and artifice to defraud". This count specified that Bryser acted as the " 'front man' " in a scheme to purchase an armored car company, and that in August 1989 the three men agreed to purchase Titan (later renamed Hercules) in furtherance of their scheme. One of the "overt acts" charged in this count was that on August 17, 1989, Gerald DeGerolamo delivered $100,000 in currency, in a plastic bag, to Mr. Bryser for the purpose of making this purchase.

Counts 3 through 9 of the Federal indictment charged that the three conspirators "placed in the care and custody of the United States Postal Service * * * various mail matter" as part of their execution of a scheme to defraud seven different victims (one for each of these seven counts) of stated sums of money. Count 3 relates to Sun and charged that the conspirators had used the mails in furtherance of a scheme to defraud Sun of $1,000,000. The fourth count related to Lloyds and charged that the conspirators had used the mails to defraud Lloyds of $9,000,000. Counts 10 through 17 of the indictment charged that the three conspirators "transmitted by means of wire communications in interestate commerce" for the purpose of executing a scheme to defraud seven victims. Count 10 charged that the conspirators had used wire communications in order to defraud Sun. Count 11 charged that the conspirators had used wire communications in order to defraud Lloyds. The three conspirators were later convicted on all counts contained in the indictment. Their convictions were later affirmed on appeal *(see, United States v Bryser,* 954 F2d 79).

The plaintiffs' motion for summary judgment was also supported by the affidavit of Anthony H. Ippolito, an Assistant

Vice President of Wm. H. McGee & Co., Inc., which serves as Sun's underwriting manager. Mr. Ippolito was personally familiar with the insurance policy in question, Sun policy number S-ITF-804137, which had been originally issued to Titan, and which was later endorsed so as to cover Hercules.

According to Mr. Ippolito, the endorsement which changed the identity of the named insured to Hercules was issued in October 1989 and made effective August 17, 1989. Mr. Ippolito had previously been contacted by a specialist in obtaining insurance coverage and had learned that Titan had been sold and that its new owner "was making substantial costly modifications to the business". The endorsement changing the identity of the named insured was not issued until after a representative of the insurance "specialist" had personally met with Mr. Bryser, one of the conspirators, in October 1989.

Attorneys for the various customers of Hercules whose property was stolen submitted affidavits in opposition to Sun's motion. These attorneys advanced arguments similar to those advanced in the earlier motions of Macy's and Investor's. They argued that there was no proof of Bryser's having made misrepresentations to Sun. The attorneys also argued that Hercules' customers, the real victims of the theft, did not "stand in Hercules's shoes", and could thus not be bound by the findings of fact made to Hercules's detriment in the Federal criminal case.

In an order dated August 27, 1991, the Supreme Court denied the plaintiffs' motion. The court stated that "[t]he recent criminal convictions of Ronnie Bryser, Vincent DeGerolamo and Gerald DeGerolamo * * * do not establish that the customers stand in Hercules' shoes". In other words, the court concluded that the customers were not precluded from relitigating the issue of the conspirators' guilt or innocence of fraud, so that an issue of fact remained as to whether Sun's policy was or was not void *ab initio.*

The plaintiffs have appealed from the order dated August 27, 1991. Macy's and Investor's have appealed from the orders dated January 28, 1991 and August 15, 1990, respectively, and The Great Atlantic & Pacific Tea Company, Inc., Kings Supermarket, Inc., Toys "R" Us, Inc., and Grand Union Company, Inc. appeal from the order dated January 28, 1991. For the following reasons we reverse the order dated August 27, 1991, insofar as appealed from, grant summary judgment to the plaintiffs, and declare that their respective policies, insofar as they provided theft insurance, are void.

A policy of insurance will be voided where it is proved that in applying for the insurance coverage the insured fraudulently concealed a material fact *(Sebring v Fidelity-Phenix Fire Ins. Co.,* 255 NY 382; *see also, Mutual Life Ins. Co. v Hilton-Green,* 241 US 613).* The mere nondisclosure of a fact, concerning which the insured has not been asked, will not necessarily void an insurance policy *(see, Sebring v Fidelity-Phenix Fire Ins. Co., supra; Valton v National Fund Life Assur. Co.,* 20 NY 32; *Smith v Countryman,* 30 NY 655, 671; *Mallory v Travelers' Ins. Co.,* 47 NY 52; *Browning v Home Ins. Co.,* 71 NY 508). However, if fraudulent intent is present, the opposite result will follow. In order to constitute fraud, there must be a willful intent to defraud and not a mere mistake or oversight *(see, Sebring v Fidelity-Phenix Fire Ins. Co., supra,* at 386-387; *see also, Smirlock Realty Corp. v Title Guar. Co.,* 52 NY2d 179, 187; *Stecker v American Home Fire Assur. Co.,* 299 NY 1, 5-6; *Boyd v Otsego Mut. Fire Ins. Co.,* 125 AD2d 977; *Lighton v Madison-Onondaga Mut. Fire Ins. Co.,* 106 AD2d 892; 45 CJS, Insurance, § 538).

If effect is to be given to the doctrine of issue preclusion in this case, there can be no question that the insured, Hercules, acting through its corporate agent, Mr. Bryser, for whose fraudulent conduct Hercules is by imputation responsible *(see, e.g., Peerless Ins. Co. v Sears,* 34 AD2d 725; *District 65, UAW v Harper & Row, Publs.,* 576 F Supp 1468, 1483), did not merely conceal a material fact, that is, the existence of a plan to steal from Hercules's vault, but did so with the actual intent to defraud Sun. Mr. Bryser's conviction on counts 1, 3, 4, 10 and 11 of the indictment noted above permits no other conclusion. It would follow from this that both Sun's and Lloyds's policies were void *ab initio.*

In order to resist granting summary judgment against them on this ground, Hercules's customers argue, *inter alia,* that their right to recover under these policies is entirely independent of whatever right to recover might exist in favor of Hercules. Such an argument might be persuasive in the event that these innocent customers were coinsureds, that is, insureds named as such in the policies themselves *(see, e.g., Reed v Federal Ins. Co.,* 71 NY2d 581). However, we agree with the plaintiffs that the provision of Sun's policy which permits any loss to be paid to Hercules's customers "as their respective interest may appear" confers upon those customers, at most, the status of traditional loss payees. As such, the customers' right to payment would be subject to the same defenses as

those which the plaintiffs could assert against Hercules *(see, e.g., Hessian Hills Country Club v Home Ins. Co.,* 262 NY 189; *Waltman v Cantor,* 57 Misc 2d 276; *Golden Door Jewelry Creations v Lloyds Underwriters,* 8 F3d 760, *vacating* 758 F Supp 708 and 748 F Supp 1529; 10A Couch, Insurance 2d § 42:705 [rev ed]; 5A Appleman, Insurance Law and Practice § 3401).

Hercules's customers also argue that there is an issue of fact as to whether the matters concealed by Hercules, through Mr. Bryser, were material. We disagree. The materiality of the particular fact which was concealed in this case, i.e., the actual existence of a conspiracy to commit the theft, can be assumed as a matter of law *(cf., Sebring v Fidelity-Phenix Fire Ins. Co.,* 255 NY 382, *supra; Texaco Inc. v Synergy Group,* 171 AD2d 788 [materiality usually question for jury]). The evidence concerning materiality in this case is "clear and substantially uncontradicted [so] that the question is a matter of law for the court to decide" *(Continental Ins. Co. v RLI Ins. Co.,* 161 AD2d 385, 387, citing *Process Plants Corp. v Beneficial Natl. Life Ins. Co.,* 53 AD2d 214, *affd* 42 NY2d 928). The crucial question which remains to be decided is whether the doctrine of issue preclusion may, in fact, be applied in the context of this case.

■ The doctrine of issue preclusion conserves judicial resources and prevents repetitive litigation and potentially inconsistent judgments by providing, in general, that once a particular question of fact has been decided in one administrative or judicial forum, that same question of fact may not be reopened for further litigation in the context of a subsequent administrative or judicial proceeding between the same parties *(see, e.g., Ryan v New York Tel. Co.,* 62 NY2d 494; *Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481). This doctrine may be applied only in a subsequent proceeding to the detriment of a party who in the prior proceeding "had a full and fair opportunity to contest the dispositive decision, or was in privity with one who did" *(Continental Cas. Co. v Rapid-Am. Corp.,* 80 NY2d 640, 649, citing *Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485-486, *supra; D'Arata v New York Cent. Mut. Fire Ins. Co.,* 76 NY2d 659, 665). In the present case, the appellants-respondents point out that they were not parties to the prior Federal criminal action, and thus assert that they cannot be precluded from relitigating any of the issues of fact necessarily decided therein, including that of Mr. Bryser's, and hence Hercules's, fraud.

We reject this argument on the authority of *D'Arata v New York Cent. Mut. Fire Ins. Co.* (76 NY2d 659, *supra*). In *D'Arata,* the plaintiff had been shot and injured by an individual who was covered under a homeowners' policy of insurance which had been issued by the defendant. The homeowners' policy in question excluded coverage for losses due to bodily injuries " 'which [were] expected or intended by the Insured' " *(D'Arata v New York Cent. Mut. Fire Ins. Co., supra,* at 663). In an action brought by the injured plaintiff directly against the defendant insurer *(see,* Insurance Law § 3420 [b] [1]), the Appellate Division, reversing the Supreme Court (152 AD2d 1004), granted summary judgment to the defendant insurer on the basis of proof that, in a prior criminal prosecution, the insured wrongdoer had been convicted of the crime of assault in the first degree, one of the elements of which was the intent to injure *(see,* Penal Law § 120.10 [1]). The Court of Appeals affirmed the Appellate Division, holding that because the rights of the injured victim vis-à-vis the criminal's insurer were the same as the rights of the criminal himself, the victim was in privity with the criminal for the purposes of the insurer's assertion of a defense based on the doctrine of issue preclusion. The Court reasoned that the criminal insured's intent to injure had been conclusively established, albeit in a criminal proceeding to which the injured victim had not been a party, and that relitigation of this issue for the purposes of deciding the applicability of the exclusionary clause noted above was therefore foreclosed.

The basic holding of the *D'Arata* case is this: the findings of fact necessarily made during the course of a criminal trial of an insured wrongdoer, in support of a verdict finding the insured wrongdoer guilty of a crime, will be binding during the course of a subsequent civil action between the wrongdoer's victim, on the one hand, and the wrongdoer's insurer, on the other, whenever the rights of the victim and the rights of the wrongdoer with respect to their respective abilities to recover insurance proceeds are equivalent. In *D'Arata (supra),* such equivalence existed by virtue of the rule which states that the plaintiff in an action brought pursuant to Insurance Law § 3420 (b) (1) stands in the shoes of the insured *(see, e.g., Devitt v Continental Cas. Co.,* 269 NY 474). In the present case, such equivalence exists by virtue of the rule which states that a loss payee stands in the shoes of the insured *(see, e.g.,*

*Hessian Hills Country Club v Home Ins. Co.,* 262 NY 189, *supra).* In both cases the victim is in privity with the insured wrongdoer for the purposes of applying the doctrine of issue preclusion *(see also, Nancie D. v New York Cent. Mut. Fire Ins. Co.,* 195 AD2d 535; *Aetna Cas. & Sur. Co. v Jones,* 220 Conn 285, 596 A2d 414; *Safeco Ins. Co. v Yon,* 118 Idaho 367, 796 P2d 1040; *New Jersey Mfrs. Ins. Co. v Brower,* 161 NJ Super 293, 391 A2d 923; *State Farm Fire & Cas. Co. v Reuter,* 299 Ore 155, 700 P2d 236; *cf., Holyoke Mut. Ins. Co. v Jason B.,* 184 AD2d 550).

We conclude that the appellants-respondents, customers of Hercules and loss payees under the insurance policy issued by Sun to Hercules, are in privity with Hercules, at least for the purposes of applying the doctrine of issue preclusion so as to preclude relitigation of facts previously decided against Hercules's principal in a prior criminal prosecution. Because Mr. Bryser's fraud was conclusively established in that prior prosecution, Sun's policy, and consequently Lloyds's policy as well, were void *ab initio.*

Accordingly, the appeal from the order dated August 15, 1990 is dismissed, as that order was superseded by the order dated January 28, 1991, made upon reargument, the order dated January 28, 1991 is affirmed insofar as appealed from, the order dated August 27, 1991 is reversed insofar as appealed from, on the law, the plaintiffs' motion for summary judgment is granted, and the matter is remitted to the Supreme Court, Rockland County, for entry of an appropriate judgment in their favor declaring that they have no obligation to the defendants to cover any alleged losses.

LAWRENCE, EIBER and O'BRIEN, JJ., concur.

Ordered that the appeal from the order dated August 15, 1990 is dismissed, as that order was superseded by the order dated January 28, 1991, made upon reargument; and it is further,

Ordered that the order dated January 28, 1991 is affirmed, insofar as appealed from; and it is further,

Ordered that the order dated August 27, 1991 is reversed, insofar as appealed from, on the law, the plaintiffs' motion for summary judgment is granted, and the matter is remitted to the Supreme Court, Rockland County, for entry of an appro-

priate judgment in their favor declaring that they have no obligation to the defendants to cover any alleged losses; and it is further,

Ordered that the plaintiffs are awarded one bill of costs, payable by the appellants-respondents.