**JEFFERSON INSURANCE COMPANY OF NEW YORK, Plaintiff,**

v.

**Michael CASSELLA, Thomas J. Cassella, Dolphin Marine Transport, Inc., Keith Couch, a minor child, John Munro, a minor child, James Presta, a minor child, Defendants.**

**No. CV 00–5898(DRH)(ARL).**

United States District Court,
E.D. New York.

May 7, 2003.

**162**

Speyer & Perlberg, L.L.P. by Thomas E. Scott, Esq., Melville, NY, Goldman & Hellman by Steven Goldman, Esq., Fort Lauderdale, FL, for Plaintiff.

Strongin, Rothman & Abrams, LLP by David Abrams, Esq., New York, for Defendant Michael Cassella.

McKeegan, McShane & Drago by George P. McKeegan, Esq., New York City, for Defendant Dolphin Marine Transport, Inc.

### MEMORANDUM & ORDER

HURLEY, District Judge.

In a declaratory judgment action involving a marine insurance contract, the Parties have filed cross-motions for summary judgment. For the reasons discussed *infra*, the Court grants the Defendants' motion and denies the Plaintiff's motion.

### I. BACKGROUND.

On or about March 30, 2000, Plaintiff issued a marine insurance policy ("Policy") to Defendant Michael Cassella. The Policy was issued via two different insurance brokers, to cover Michael Cassella's new "Donzi 38 ZX boat" ("Boat"). The Policy signed by Michael Cassella is comprised of four "Parts." Part 1 is the "Declarations Page," on which Michael Cassella signed the document. Part 1 also provides that "[i]t is warranted that the vessel be confined to the .... [w]aters of Long Island Sound and Great South Bay."

Part 2, the "Named Perils of Yacht Policy," contains further exclusions from the Policy. However, Part 2 makes no mention of limitations regarding users that had permission to operate the Boat. In fact, the "Definitions" portion of Part 2 expressly states that the term "insured .... [i]n addition to [the named insured] ... shall mean *any person who may be operating the insured boat with your permission.*" Policy at 1 (emphasis added).

At some point after Michael Cassella signed the "Declarations" portion of the Policy, Plaintiffs issued a "Named Operator(s)/Additional Operator(s) Endorsement" ("Endorsement"). The Endorsement states: "The person(s) listed on the following schedule is/are to be sole operator(s) of the insured vessel. If the insured vessel is operated by any other person(s), this insurance is null and void." The Endorsement was not signed by Michael Cassella.

On June 14, 2001, within the relevant period covered by the Policy, the Boat was being operated, with permission, by Defendant Thomas Cassella. On this date, the Boat collided with the Dolphin II, a charter vessel operated by Defendant Dolphin Marine Transport, Inc. ("Dolphin"). At the time of the collision, both boats were located in Freeport Creek in Nassau County, New York. (Freeport Creek is connected to the Great South Bay.) The Boat required $32,000 in repairs. The boat maintained by Dolphin also was damaged in this collision.

At some time after the collision, Michael Cassella, filed a claim with Plaintiff. Dolphin also submitted a claim to Plaintiff. Thereafter, Dolphin initiated a lawsuit alleging negligence by Thomas Cassella and seeking to hold Michael Cassella vicariously liable for the lost profits it suffered while its boat was not seaworthy.

Plaintiff refused to pay Michael Cassella's claim and, on October 2, 2000, initiated

the instant declaratory judgment action. Plaintiff's complaint argues that Michael Cassella's failure to expressly list Thomas Cassella amounted to a material breach of the insurance policy and that the Endorsement expressly excluded coverage when anyone other than the named insured operated the Boat. Based upon those two arguments, Plaintiff seeks declaratory judgment with regard to the coverage of the Policy. *See* 28 U.S.C. § 2201. Michael Cassella, while answering the complaint, filed four counterclaims. These counterclaims assert that Plaintiff has refused to perform its obligations under the Policy and seeks declaratory judgment in favor of Michael Cassella. The counterclaims further seek "attorneys fees, costs and disbursements incurred in connection with the defense of the within action and/or institution of counter-claims."

On September 30, 2002, the parties filed cross-motions for summary judgment.

## II. DISCUSSION.

### A. Cross–Motions for Summary Judgment.

It is axiomatic that summary judgment may not be granted unless "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden to show that no genuine issue of material fact exists lies with the moving party. *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering cross-motions for summary judgment in which both parties assert an absence of a genuine issue of material fact, a court need not enter a judgment for either party, but must examine each motion separately and, in each case, draw all reasonable inferences against the moving party. *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir.2001).

However, genuine issues of fact are not created by conclusory allegations. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993). Rather, summary judgment is proper when, after drawing all reasonable inferences in favor of a nonmovant, no reasonable trier of fact could find in favor of that party. *See Matsushita Elec. Industr. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. New York Insurance Law § 3420(e).

■ "Absent a specific federal rule, federal courts look to state law for principles governing maritime insurance policies ... and apply federal maritime choice of law rules to determine which state's law to apply." *Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.,* 190 F.3d 26, 30 (2d Cir.1999). Applying these principles to the instant contract, and based upon the representations of the parties, the Court concludes that New York law controls the interpretation of the Policy. *See id.* (applying New York law in similar context).

■ Michael Cassella contends that New York Insurance Law mandates that Plaintiff must provide coverage in the instant circumstances. Section 3420(e) of the New York Insurance Law provides:

No policy or contract of personal injury liability insurance or of property damage liability insurance, covering liability arising from the ownership, maintenance or operation of any motor vehicle or of ...

any vessel as defined in section forty-eight of the navigation law [N.Y. Navig. § 48(3) ], shall be issued or delivered in this state to the owner thereof, or shall be issued or delivered by any authorized insurer upon any such ... vessel then principally garaged or principally used in this state, unless it contains a provision insuring the named insured against liability for death or injury sustained, or loss or damage occasioned within the coverage of the policy or contract, as a result of negligence in the operation or use of such ... vessel ... by any person operating or using the same with the permission, express or implied, of the named insured.

N.Y. Ins. § 3420(e) (McKinney's 2002).

Section 48 of the New York Navigation Law refers to the definition utilized in Section 2 of the New York Navigation Law: " 'Vessel' shall mean any floating craft ...," N.Y. Navig. § 2(6). There is no dispute that the Boat is a vessel as defined by the N.Y. Navigation Law. However, the statute contains exceptions that apply to Section 3420(e).

Section 3420 does not apply to "the kinds of insurances set forth in [N.Y. Ins. § 2117(b)(3)(B) ]." N.Y. Ins. § 3420(i). "One such type of insurance set forth in that section is 'insurance in connection with *ocean going vessels* against any of the risks specified in paragraph twenty-one of subsection (a) of section one thousand one hundred thirteen of this chapter [N.Y. Ins. § 1113(a)(21) ].' " *Progressive Northeastern Ins. Co. v. American Ins. Co.*, No. 99 Civ. 8998, 2001 WL 959183, at *3 (S.D.N.Y. Aug. 21, 2001) (quoting N.Y. Ins. § 2117(b)(3)(B)) (emphasis added). Since the "specified risks" embrace the coverage at issue in the instant case, *see* N.Y. Ins. § 1113(a)(21), the Court must ascertain whether the Boat constitutes an "ocean

going vessel," thereby triggering the exclusion enunciated in N.Y. Ins. § 3420(i).

The New York Insurance Law does not define the term "ocean going vessel." Neither does the Policy. Three courts have, however, considered the proper meaning of this terminology. *See Progressive Northeastern,* 2001 WL 959183, at *3; *Hartford Fire Ins. v. Mitlof,* 123 F.Supp.2d 762, 766–767 (S.D.N.Y.2000); *Becker v. Allcity Ins. Co.,* No. 99 CV 2371, 2000 WL 33179289, *2–3 (E.D.N.Y. June 2, 2000); *see also Royal Ins. Co. of America v. A & C Ship Fueling Corp.,* No. CV 91–3090, 1992 WL 219783, at * 7 (E.D.N.Y. March 21, 1992), vacated ab initio by stipulation of parties, 1995 A.M.C. 504, 505 (E.D.N.Y. July 21, 1994). The courts in both *Progressive* and *Hartford Fire* concluded that "[t]he policy itself determines whether it is of the kind intended to cover 'ocean going vessels.' " *Progressive Northeastern,* 2001 WL 959183, at *3 (citing *Hartford Fire,* 123 F.Supp.2d at 767). In reaching that conclusion, both courts declined to apply the factual "ocean going" capabilities to the question of whether a particular vessel is properly considered an "ocean going vessel" under N.Y. Ins. § 2117(b)(3)(B). *See Progressive Northeastern,* 2001 WL 959183, at *3; *Hartford Fire,* 123 F.Supp.2d at 767. Rather both cases looked to the "Policy Territory" defined by the relevant policies. *Id.*

In *Progressive,* the "Policy Territory" was confined to the land, tributaries, inland lakes, bays and rivers of the continental United States or Canada, including the Long Island Sound. *Progressive Northeastern,* 2001 WL 959183, at *3. In *Hartford Fire,* the policy was geographically limited to "Inland & Coastal Waters of Hudson River Between Verrazano Narrows Bridge & Albany, Including East River & Western Long Island ...." 123 F.Supp.2d at 767. Based upon these geo-

graphic limits, both of these Courts concluded that the vessels at issue were not "ocean going vessels." *Id.; Progressive Northeastern*, 2001 WL 959183, at *3.

Plaintiff contends that *Becker v. Allcity Ins. Co.* stands for the contrary proposition that "a vessel is 'ocean going' if it is physically capable of being navigated in the ocean." Plaintiff's Memorandum at 9. The Court does not agree with this reading of the case. *Becker* involved a "a small barge that had been abandoned and disabled." *Becker*, 2000 WL 33179289, at *2. According to the *Becker* plaintiffs, this physical condition rendered the barge incapable of ocean travel and, therefore, the barge could not be considered an "ocean going vessel." *Id.* (It is unclear what the underlying insurance policy stated about the use of the barge.) However, the parties agreed that barges are generally considered ocean-going vessels. *Id.* (stating that the parties "do not argue that barges generally fall outside the category of ocean going vessels."). With these facts undisputed, the *Becker* court declined to use the current physical status of the barge to alter its status as an "ocean going vessel." *Id.* Therefore, despite Plaintiff's representations to the contrary, *Becker* stands for the proposition that the current physical state of the boat does not control the interpretation of "ocean going vessel."

In light of these cases, the Court declines to address the physical capacities of the Boat. Rather, the Court focuses upon the express geographic limits expressed in the Declarations portion of the Policy. This language reads: "It is warranted that the vessel be confined to the following waters: [w]aters of Long Island Sound and Great South Bay." *See* Michael Cassella's Exhibit F, Declarations. Applying

this language, the Court concludes that the Boat is not an "ocean going vessel" for the purposes of N.Y. Ins. § 2117(b)(3)(B). Accordingly, N.Y. Ins. § 3420(e) applies to the Policy.

C. Breach of the Endorsement.

■ Plaintiff next argues that "breach of the named operator endorsement voids the coverage afforded by [the] Policy." Plaintiff's Memorandum at 11. This argument is not persuasive. The Endorsement states that "[t]he person(s) listed on the following schedule is/are to be sole operator(s) of the insure vessel .... [and i]f the insured vessel is operated by any other person(s), this insurance is null and void." The language of the Endorsement directly violates N.Y. Ins. Law § 3420(e). Where a provision of an insurance policy does not comport with the public policies codified in N.Y. Ins. § 3420(e), it is void. *Royal Indem. Co. v. Providence Washington Ins. Co.*, 92 N.Y.2d 653, 658, 684 N.Y.S.2d 470, 707 N.E.2d 425 (1998) ("the exclusion violates our public policy and is void."). As such, the Court will not enforce this provision.[1]

■ Plaintiff also contends that the Endorsement should "be determined to be an express warranty by this Court." Plaintiff's Memorandum at 11. Plaintiff urges this interpretation because Section 3106(c) of the New York Insurance Law provides: "This section shall not affect the express or implied warranties under a contract of marine insurance in respect to, appertaining to or in connection with any and all risks or perils of navigation, transit, or transportation ....". N.Y. Ins. § 3106(c). However, even if the Court were to consider the Endorsement as a

---

1. Parenthetically, there is significant doubt, given the manner in which the Endorsement was promulgated, whether Michael Cassella could be bound by an Endorsement that otherwise complied with public policy.

warranty, Section 3106(c) merely limits *the effect of Section 3106* on the enforceability of warranties. Stated differently, by its express terms, Section 3106(c) does not affect the applicability of Section 3420(e). Moreover, the statute defines a warranty as "any provision of an insurance contract which has the effect of requiring, *as a condition precedent of the taking effect of such contract or as a condition precedent of the insurer's liability thereunder,* the existence of a fact which tends to diminish, or the nonexistence of a fact which tends to increase, the risk of the occurrence of any loss, damage, or injury within the coverage of the contract." N.Y. Ins. § 3106(a) (emphasis added). The Endorsement at issue was not a part of the contract signed. Nor was the Endorsement promulgated prior to the enactment of the insurance coverage. In fact, the Endorsement was promulgated *after* the Policy's March 30, 2000, effective date. Therefore, the Endorsement cannot be a warranty within the meaning of N.Y. Ins. § 3106. In light of the foregoing discussion, the Court finds Plaintiff's warranty argument unavailing.

 Finally, Plaintiff urges the Court to hold that Michael Cassella violated the terms of the contract by not following the provisions of the Endorsement. *See* Plaintiff's Memorandum at 19. Plaintiff urges that the Court should reach this conclusion even if the Court invalidates the Endorsement. *Id.* ("Regardless of the view that this Court ultimately takes with regard to the viability of the ... Endorsement ..., there is no viable argument to be made that would result in that provision not voiding the coverage ...."). Plaintiff cites no persuasive authority for this proposition. *Id.* As such, the Court declines to adopt Plaintiff's circular argument.

## D. Full Disclosure and the Doctrine of Uberrimae Fidei.

Plaintiff also argues that "[w]ithout disclosure of what the record illustrates was a fact material to the marine insurer's underwriting decision, summary judgment must be awarded to the Plaintiff." Plaintiff's Memorandum at 17. Specifically, Plaintiff contends that Michael Cassella's failure to disclose "the fact that ... Thomas Cassella would be utilizing the insured vessel at times ..." violated the doctrine of *uberrimae fidei*. *Id.* This argument fails to persuade the Court.

 The doctrine of *uberrimae fidei* requires that "the party seeking insurance is required to disclose all circumstances known to him which materially affect the risk" to the insurer. *Puritan Ins. Co. v. Eagle Steamship Co. S.A.,* 779 F.2d 866, 870 (2d Cir.1985) (citing *Btesh v. Royal Ins. Co., Ltd., of Liverpool,* 49 F.2d 720, 721 (2d Cir.1931)). The operative question, under the objective standard for disclosure, is whether a reasonable person in the assured's position would know that the particular fact is material. *Puritan,* 779 F.2d at 870. "To be material, the fact must be 'something which would have controlled the underwriter's decision' to accept the risk." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 13 (2d Cir.1986) (quoting *Btesh,* 49 F.2d at 721).

 Based upon the proffered facts, the Court cannot conclude that a reasonable person in Michael Cassella's position would know that the identity and driving record of his brother was material. To begin, the law provided that Plaintiff must cover permissive users even if they were not named in the Policy. Moreover, other than the invalid Endorsement, the Policy did not express any limits as to which permissive users could operate the Boat. *See* Policy at 1 (the term "insured" shall include "any person who may be operating the insured

boat with your permission"). Finally, though Thomas Cassella operated the boat on January 14, 2000, and on one prior occasion, there is no indication, from the submitted evidence, that Thomas Cassella utilized the Boat regularly. Therefore, in light of the proffered evidence, the Court concludes that no reasonable trier of fact could find that Michael Cassella violated the doctrine of *uberrimae fidei*. *See Francaise S.A. v. Halbart*, 189 F.3d 461, 1999 WL 668122, at *2 (2d Cir.1999) ("The [*uberrimae fidei* ] duty to disclose, however, does not require the party seeking insurance to inform the insurer of his plans to engage in activities within the scope of the policy's coverage."); *Sun Ins. Co. of New York v. Hercules Secs. Unlimited,* Inc., 195 A.D.2d 24, 605 N.Y.S.2d 767, 770–71 (2d Dep't 1993) (holding that, absent fraud, the insured's failure to disclose a fact about which it was not asked is not grounds for avoiding the policy).

### E. Attorney's Fees.

"Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by [declaratory] judgment." 28 U.S.C. § 2202. This section allows for the imposition of attorneys fees. *See New York Marine & General Ins. Co. v. Tradeline (L.L.C.),* 266 F.3d 112, 129 (2d Cir.2001) (reviewing a decision denying attorneys fees in a declaratory judgment action). Although, "[u]nder New York law, it is well settled that an insured cannot recover his legal expenses in a controversy with a carrier over coverage, even though the carrier loses the controversy and is held responsible for the risk .... a policyholder *may* recover attorney's fees, when he has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." *Employers*

*Mut. Cas. Co. v. Key Pharms.,* 75 F.3d 815, 824 (2d Cir.1996) (emphasis added).

In the instant action, Michael Cassella claims that he was put into a defensive position by the institution of this action. Still, 28 U.S.C. § 2202 requires a hearing prior to imposition of attorneys fees. Moreover, the available case law indicates that the Court must make a finding "bad faith" prior to the imposition of attorneys fees. *See New York Marine,* 266 F.3d at 129. The parties have not adequately briefed the issue of "bad faith." Therefore, the Court cannot impose attorneys fees in the context of the instant motion.

### III. CONCLUSIONS

Based upon the forgoing discussion, the Court DENIES Plaintiff's summary judgment motion and GRANTS Michael Cassella's summary judgment motion. The Clerk of Court is directed to CLOSE this case.

With regard to attorneys fees, the parties are directed to report to the Court on June 20, 2003, at 3:00 in the afternoon for a hearing. At that hearing, the Court will also determine the amount of attorneys fees, if appropriate. In preparation for that hearing the parties are directed to provide the following materials:

(1) Michael Cassella is directed to serve a letter brief regarding the propriety of imposing attorneys fees on May 15, 2003;

(2) Michael Cassella is also directed serve on all parties a statement with respect to the amount of damages, including attorney's fees, to which they believe plaintiff is entitled by May 15, 2003. Copies of any and all documentary evidence relied on to prepare the statement, including contemporaneous time records and other specific informa-

tion on how computations were completed, must also be served on that date;

(3) Plaintiffs shall serve their opposition on May 29, 2003. These papers shall include any opposition to the imposition of attorneys fees as well as to the calculation of the suggested fees;

(4) Michael Cassella shall serve a consolidated reply memorandum on June 10, 2003.

(5) Michael Cassella shall file all papers with the Court on June 12, 2003. *Any papers received prior to June 12, 2003, shall be returned undocketed and unfiled.*

(6) The parties' memoranda shall not exceed 5 pages in length.

**SO ORDERED.**